683 S.E.2d 818

Marilee B. FAIRCHILD and Larry J. Fairchild,
Appellants/Respondents,

v.

SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION,
William Leslie Palmer and Palmer Construction Co., Inc.,
Defendants,

Of whom William Leslie Palmer and Palmer Construction
Co., Inc., are Respondents/Appellants.

No. 4611.

Court of Appeals of South Carolina.

Heard March 18, 2009.
Decided Aug. 27, 2009.
Rehearing Denied Oct. 22, 2009.

Bert G. Utsey, III, of Walterboro, and George David Jebaily, of Florence, for Appellants/Respondents.

Kirby D. Shealy, III and Bradley L. Lanford, both of Columbia, for Respondents/Appellants.

LOCKEMY, J.

On appeal from this tort action, Marilee and Larry Fairchild [1] argue the trial court erred in (1) refusing to instruct the jury on certain charges; (2) directing a verdict on Fairchild's claim for punitive damages; and (3) denying their motion for a new trial. William Palmer and Palmer Construction cross-appeal and maintain the trial court erred in (1) failing to grant Palmer's motion for an independent medical examination of Fairchild and (2) granting Fairchild's motion for directed verdict as to the affirmative defense of comparative negligence. We affirm in part, reverse in part, and remand.

## FACTS

On March 1, 2001, Fairchild and Palmer were involved in an automobile accident in the inside, southbound lane of Interstate 95. James Rabb, a South Carolina Department of Transportation (SCDOT) employee, was also traveling southbound but began crossing over the median to head in the northerly direction. Rabb was driving a SCDOT dump truck with a trailer attached carrying a backhoe. While Rabb waited for the northbound traffic to clear, the trailer hitched to the dump truck protruded approximately halfway across the inside southbound lane in which Fairchild and Palmer were traveling.

Two cars traveling ahead of Fairchild simultaneously switched from the inside to the outside traffic lane. Fairchild, driving a minivan, then saw the backend of Rabb's trailer blocking her traffic lane. In response, Fairchild "flashed" her brakes but did not slam on the brakes. Fairchild testified she had her foot on the brake as she continued to coast in order to

---

1. Marilee Fairchild's husband, Larry, was voluntarily dismissed as a party to the civil action prior to the commencement of trial. Therefore, for purposes of this opinion when we refer to Fairchild we reference Marilee Fairchild only.

stay ahead of the car behind her and not hit the trailer obstructing the road. Though Fairchild avoided colliding with Rabb's trailer, she did not avoid a collision with Palmer, who was traveling directly behind her.

Palmer, also driving a truck and hauling a trailer, braked in an attempt to avoid colliding with Fairchild. Palmer also swerved to the right but was unable to avoid hitting Fairchild's vehicle. The force of the impact caused Fairchild's minivan to flip and roll, ultimately coming to a rest in the median. Fairchild sustained injuries to her head, neck, and right shoulder as a result of the accident.

On February 26, 2003, Fairchild brought suit against SCDOT, Palmer, and Palmer Construction. In her complaint, Fairchild maintained Palmer was operating a vehicle owned by Palmer Construction when the accident occurred. Additionally, Fairchild asserted several negligence claims against the three defendants. Fairchild requested a jury trial and sought both actual and punitive damages. Ultimately, Fairchild entered into a covenant not to sue with SCDOT, and the Honorable Roger Young dismissed SCDOT as a party to the action.

During the trial, both sides presented evidence regarding what happened on the day of the accident, as well as medical evidence regarding Fairchild's injuries. Over the course of the trial, both sides also made several motions. Palmer moved for an independent medical exam pursuant to Rule 35(a), SCRE, and sought to have it performed by Dr. James Ballenger, a psychiatrist with whom Palmer had consulted as an expert witness. Ultimately, the trial court denied Palmer's request because Dr. Ballenger was listed as an expert witness for the defense. At the close of the evidence, the trial court directed a verdict for Fairchild on Palmer's affirmative defense of comparative negligence. Thereafter, Palmer renewed his motion for a directed verdict as to punitive damages, and the trial court granted the motion. The trial court also refused to charge the jury with several instructions requested by Fairchild.

At the conclusion of trial, the jury found in favor of Fair-

child and awarded her $720,000 in damages.[2] After the jury published its verdict, Fairchild moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial *nisi additur*. The trial court denied all of Fairchild's post-trial motions. Both Palmer and Fairchild appeal.

## LAW/ANALYSIS

### I. Jury Instructions

 Fairchild contends the trial court erred in refusing to instruct the jury on three requested charges. She maintains the charges were timely submitted to the trial court, and the charges would have assisted the jury in making an informed decision based on South Carolina law; thus, the charges rendered were inadequate. Palmer argues there were no allegations or evidence of the intervening negligence of third persons in this case. Therefore, the trial court did not err in refusing to instruct the jury on the charges. Finally, Palmer submits Fairchild cannot demonstrate the requisite error or prejudice to warrant reversal on this basis. We agree with Fairchild and find the trial court erred in refusing to instruct the jury on the requested charges.

 "An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court committed an abuse of discretion." *Cole v. Raut*, 378 S.C. 398, 404, 663 S.E.2d 30, 33 (2008). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or is not supported by the evidence." *Id.* "A trial court must charge the current and correct law." *Wells v. Halyard*, 341 S.C. 234, 237, 533 S.E.2d 341, 343 (Ct.App.2000). In reviewing a jury charge for alleged error, an appellate court must consider the charge as a whole in light of the evidence and issues presented at trial. *Id.* "Ordinarily, a trial [court] has a duty to give a requested instruction that correctly states the law applicable to the issues and evidence." *Fernanders v. Marks Constr. of S.C., Inc.*, 330 S.C. 470, 473, 499 S.E.2d 509, 510 (Ct.App.1998). However, jury instructions should be confined to the issues made by the pleadings and supported by

---

2. The trial court reduced the jury's award to $715,000 after determining the award should be offset by $5,000 from a prior settlement.

the evidence. *Baker v. Weaver,* 279 S.C. 479, 482, 309 S.E.2d 770, 771 (Ct.App.1983). In *Burns v. South Carolina Commission for Blind,* 323 S.C. 77, 80, 448 S.E.2d 589, 591 (Ct.App. 1994) (internal citations omitted) this court held:

> If the requested charge states a sound principle of law that is applicable to the case, and not otherwise covered by the charge, refusal to charge it is error and requires a new trial. Moreover, when general instructions to the jury are insufficient to enable the jury to understand fully the law of the case and issues involved, a refusal to give a requested charge is reversible error.

■ To warrant reversal, the party seeking the requested jury charge must demonstrate error and prejudice. *Cole v. Raut,* 378 S.C. 398, 405, 663 S.E.2d 30, 33 (2008) ("An erroneous jury instruction, however, is not grounds for reversal unless the appellant can show prejudice from the erroneous instruction."). "An alleged error is harmless if the appellate court determines beyond a reasonable doubt that the alleged error did not contribute to the verdict." *Wells,* 341 S.C. at 237, 533 S.E.2d at 343.

In the present case, Fairchild requested the trial court submit the following charges to the jury:[3]

> Plaintiff's Request to Charge Number 11: Liability exists for the natural and probable consequences of negligent acts and omissions, proximately flowing there from. Intervening negligence of a third person will not excuse the original wrongdoer if such intervention ought to have been foreseen in the exercise of due care. *Matthews v. Porter,* 239 S.C. 620, 124 S.E.2d 321 (1962). It is the law in South Carolina that the negligence of a treating doctor is reasonably foreseeable. It is the general rule that if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the negligent act of the doctor as part of the immediate and direct damages which naturally flow from the original injury. *Bessinger v. Deloach,* 230 S.C. 1, 94 S.E.2d 3 (1956); *Graham v. Whitaker,* 282 S.C. 393, 321 S.E.2d 40 (1984).

---

3. Jury instructions are written as they appear in the Record on Appeal.

Plaintiff's Request to Charge Number 12: The intervening negligence of a third person will not excuse the original wrongdoer if such intervention ought to have been foreseen in the exercise of due care. *Graham v. Whitaker,* 282 S.C. 393, 321 S.E.2d 40 (S.C.1984). The negligence of an attending physician is reasonably foreseeable. Therefore, if an injured person uses ordinary care in selecting a physician for treatment of her injuries, the law regards the aggravation of the injury resulting from the negligent act of the physician as part of the immediate and direct damages which naturally flow from the original injury. *Payton v. Kearse,* 319 S.C. 188, 460 S.E.2d 220 (Ct.App.1995).

Plaintiff's Request to Charge Number 13: I CHARGE YOU THAT "if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the negligent act of [or treatment by] the physician as a part of the immediate and direct damages which naturally flow from the original injury." *Bessinger v. DeLoach* [230 S.C. 1] 94 S.E.2d 3, 5, (S.C.1956).

In its ruling regarding the jury charge, the trial court stated it refused to charge the jury on the requests because there was no evidence of negligence by an attending physician. However, Fairchild made a compelling argument that the trial court should have instructed the jury on the requested charges. Fairchild argues defense counsel stressed the side effects of the drugs Fairchild took and suggested she was overmedicated. Palmer seems to imply the overmedication, rather than Palmer's negligence, was the source of many of Fairchild's ailments. In support of his theory, Palmer called and questioned several doctors and nurses to discuss Fairchild's course of treatment. The following statement by opposing counsel made during closing arguments, in particular, was convincing that the charges were relevant: "So ask yourself, is it the chronic post-traumatic headache that is the disabling headache, or is it the medication over-use that is the disabling headache?" Therefore, we find Fairchild demonstrated error. Moreover, given the jury's verdict and the amount of damages at issue, we also find the trial court's refusal to instruct the jury could have impacted the jury's verdict, thereby proving prejudice. Accordingly, we find the

trial court erred in failing to instruct the jury on Fairchild's requested charges.[4] Therefore, we reverse and remand.

## II. Punitive Damages

■ Fairchild maintains the trial court erred in directing a verdict in favor of Palmer on Fairchild's punitive damages claim because evidence presented a jury question as to whether Palmer was reckless. In support of her recklessness claim, Fairchild notes Palmer was driving a large commercial truck in heavy traffic when the accident occurred, but still maintained a speed of sixty-five to seventy miles per hour. Based on Palmer's conduct and his statutory violations, Fairchild maintains the jury should have been permitted to consider whether Palmer acted recklessly. We agree.

### A. Current South Carolina Precedent

■■ When evidence presented at trial yields only one conclusion concerning liability, the trial court may properly grant a motion for directed verdict. *See Ecclesiastes Prod. Ministries v. Outparcel Assocs.,* 374 S.C. 483, 490, 649 S.E.2d 494, 497 (Ct.App.2007) ("A motion for directed verdict goes to the entire case and may be granted only when the evidence raises no issue for the jury as to liability."). So long as no more than one inference is created from the evidence presented, a jury issue is not created, and the trial court is proper in directing a verdict. *Huffines Co. v. Lockhart,* 365 S.C. 178, 187, 617 S.E.2d 125, 129 (Ct.App.2005) (holding when the evidence is susceptible of more than one reasonable inference, a jury issue is created and the court may not grant a directed verdict).

■ "A plaintiff is entitled to recover punitive damages if the act complained of is determined to be willful, wanton or reckless." *Camp v. Components, Inc.,* 285 S.C. 443, 444, 330 S.E.2d 315, 316 (Ct.App.1985). A jury may award punitive damages even "when the wrongdoer does not actually realize that he is invading the rights of another, provided the act is

---

4. Our ruling does not indicate the trial court was required to instruct the jury on all requested charges. Because of their similarity, such a charge could be repetitive. It is within the trial court's discretion to determine which charges are relevant given the evidence presented.

committed in such a manner that a person of ordinary prudence would say that it was a reckless disregard of another's rights." *Id.* (quoting *Hicks v. McCandlish,* 221 S.C. 410, 415–16, 70 S.E.2d 629, 631 (1952)).

Under current South Carolina precedent, negligence per se is evidence of recklessness requiring the trial court to submit the issue of punitive damages to the jury. *Wise v. Broadway,* 315 S.C. 273, 276, 433 S.E.2d 857, 859 (1993) ("The causative violation of a statute constitutes negligence per se and is evidence of recklessness and willfulness, requiring the submission of the issue of punitive damages to the jury."); *Rhodes v. Lawrence,* 279 S.C. 96, 97–98, 302 S.E.2d 343, 344 (1983) ("In these circumstances, a jury question as to punitive damages was clearly presented given the well settled rule that a showing of statutory violation can be evidence of recklessness and willfulness."); *Austin v. Specialty Transp. Servs., Inc.,* 358 S.C. 298, 314, 594 S.E.2d 867, 875 (Ct.App.2004) ("A factual question as to punitive damages is presented when there is evidence of a statutory violation."). These cases limit their holdings to creating a jury question only and not recklessness per se. In that regard the *Wise* court held:

> Violation of a statute does not constitute recklessness, willfulness, and wantonness *per se,* but is some evidence that the defendant acted recklessly, willfully, and wantonly. It is always for the jury to determine whether a party has been reckless, willful, and wanton. However, it is not obligatory as a matter of law for the jury to make such a finding in every case of a statutory violation.

315 S.C. at 276–77, 433 S.E.2d at 859 (internal citations omitted). In *Austin,* this court upheld the *Wise* holding finding a jury question is created when evidence supports violation of a statute rather than recklessness per se. 358 S.C. at 314–15, 594 S.E.2d at 875–76.

*Wise* is factually similar to the present case. There, Broadway was following Wise at a distance of three to four car lengths and was driving a heavy duty pickup truck with a half-full 140–gallon fuel tank in the back. *Wise,* 315 S.C. at 275, 433 S.E.2d at 858. When Wise braked in preparation for a turn, Broadway, unable to bring his vehicle to a stop, hit Wise from behind. *Id.* at 275, 433 S.E.2d at 859. The trial court

struck Wise's punitive damages request after stating it did not believe a simple statutory violation gave rise to a punitive damages charge. *Id.* at 276, 433 S.E.2d at 859. The supreme court found the trial court erred and remanded the case for a new trial. *Id.* at 277, 433 S.E.2d at 859.

This court ruled similarly in *Austin*, and affirmed a trial court's submission of a punitive damages claim to the jury. 358 S.C. at 320, 594 S.E.2d at 878. There, while merging onto U.S. 29, a tractor-trailer failed to yield to Austin's right of way. *Id.* at 304, 594 S.E.2d at 870. The truck struck Austin's vehicle, causing injuries. *Id.* This court found Specialty Transportation's agent violated certain statutes by failing to stop and yield to Austin's right of way which established negligence per se. *Id.* at 314, 594 S.E.2d at 875. Therefore, submission of punitive damages to the jury was affirmed.

### B. Cases Preceding *Wise*

As Palmer noted at oral argument and in his briefs, *Wise* did not specifically overrule *Bell v. Atlantic Coast Line Railroad,* 202 S.C. 160, 24 S.E.2d 177 (1943), and *Cubbage v. Roos,* 181 S.C. 188, 186 S.E. 794 (1936). Further, as then Associate Justice Toal noted in her dissenting opinion in *Wise:* "Where only one reasonable inference can be deduced from the evidence, however, the question becomes one of law for the court, and the court can refuse to submit punitive damages to the jury, even though the letter of some statute has not been observed by the defendant." 315 S.C. at 281, 433 S.E.2d at 861–62 (Toal A.J., dissenting) (citing *Bell,* 202 S.C. 160, 24 S.E.2d 177 (1943)).

In *Bell,* the jury awarded both actual and punitive damages after Bell alleged Atlantic Coast failed to maintain a railroad crossing in a manner safe for public use as required by law. 202 S.C. at 163–65, 24 S.E.2d at 179. There, the trial court refused to direct a verdict on punitive damages and later refused to set aside the punitive damages award. *Id.* at 164–65, 24 S.E.2d at 179. On review, the *Bell* court found no testimony supported the allegations in Bell's complaint. *Id.* at 171, 24 S.E.2d at 182. In referencing *Cubbage,* the court stated: "[W]e do not think that the existence of these statutes is controlling of the question of punitive damages under the

testimony herein, if indeed, such statutes had any bearing on any phase of the case." 202 S.C. at 173, 24 S.E.2d at 183. Additionally, the *Bell* court found: "It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute and that he would not have been injured if the duty had been performed." *Id.* at 174, 24 S.E.2d at 183 (citation omitted). Accordingly, the court found "the trial [court] erred in refusing to direct a verdict against punitive damages, and in submitting the question of punitive damages to the jury, and . . . in overruling the defendant's motion for a new trial with respect to punitive damages." 202 S.C. at 175, 24 S.E.2d at 184. Though dicta rather than a holding, we find language from *Bell* in conflict with later cases.

In *Cubbage*, the South Carolina Supreme Court affirmed the trial court's decision to grant a new trial after the jury rendered a verdict on both actual and punitive damages. 181 S.C. at 203, 186 S.E. at 795. There, the trial court believed it erred in submitting the issue of punitive damages to the jury even though evidence demonstrated Roos was driving over the posted speed limit when he hit a child crossing the street. *Id.* at 190, 186 S.E. at 795. After reviewing several cases, the *Cubbage* court found:

> This court has not held that the mere violation of the letter of a statute in and of itself requires the [trial court] to submit an issue of recklessness, willfulness, or wantonness where the evidence shows that the spirit of the statute was being complied with, and the only reasonable inference from all the testimony is that such violation of the statute did not in fact amount to a reckless, willful, or wanton act . . . . In no case called to our attention has the court held that the trial [court] is powerless to direct a verdict as to punitive damages, or more properly speaking, peremptorily instruct the jury that it cannot award punitive damages, even though the letter of some statute has not been observed. To so hold would overrule the well-recognized principle that if only one reasonable inference can be deduced from the evidence, it becomes a question of law for the court, and not a question of fact for the jury.

*Id.* at 195–96, 186 S.E. at 797. When read in conjunction with preceding cases like *Bell* and *Cubbage*, which are still in effect, the law is unclear. Although in conflict with *Bell* and *Cub-*

*bage*, principles from *Wise, Rhodes*, and *Austin* are controlling as the latest precedent, and until the South Carolina Supreme Court clarifies this issue, trial courts are bound to charge the jury on punitive damages when presented evidence of negligence per se.

In the present case, because evidence existed Palmer was negligent per se, we reverse the grant of Palmer's directed verdict motion on punitive damages. Specifically, evidence existed Palmer was following another vehicle too closely and speeding. Consequently, the jury could have found he violated sections 56–5–1930(a) and 56–5–1520(A) of the South Carolina Code (2006). Therefore, because we are bound by supreme court precedent, we find the trial court erred by granting Palmer's directed verdict motion because a finding of a statutory violation may be considered by the jury as evidence of recklessness. Accordingly, we remand and instruct the trial court to submit the issue of punitive damages to the jury. On remand, whether or not punitive damages are warranted will be left to the jury's determination.

## III. Motion for New Trial

Additionally, Fairchild argues the trial court erred in denying her motion for a new trial because the verdict was grossly inadequate based on the evidence. Specifically, Fairchild maintains the trial court should have vetoed the jury's verdict using the thirteenth juror doctrine. Alternatively, Fairchild maintains the trial court could have granted a new trial absolute on the inadequate verdict. Given our ruling on the jury instruction issue, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## IV. Independent Medical Examination

Next, Palmer argues the trial court erred in denying his motion for an Independent Medical Examination (IME) of Fairchild. Specifically, Palmer contends Fairchild did not

pose a reasonable objection to his selection of Dr. Ballenger to perform the IME.[5] We disagree.

As a general rule, appellate courts will be bound by the findings of the trial court on motions preliminary to trial when the evidence conflicts or the findings are supported by evidence and not clearly wrong or controlled by an error of law. *City of Chester v. Addison,* 277 S.C. 179, 182, 284 S.E.2d 579, 580 (1981); *Askins v. Firedoor Corp.,* 281 S.C. 611, 615, 316 S.E.2d 713, 715 (Ct.App.1984).

Palmer moved for an IME pursuant to Rule 35(a), SCRCP, and sought to have it performed by Dr. James Ballenger, a psychiatrist with whom Palmer consulted as an expert witness. At the motion hearing, Fairchild objected to Dr. Ballenger's relationship with Dr. Price, another expert in the case. Fairchild also argued Dr. Ballenger should not perform an IME because he had reviewed Fairchild's medical records to form an opinion and would be biased. Judge Young ruled that Fairchild had raised a reasonable objection and informed the parties he would appoint another physician to perform the examination. After Palmer moved for reconsideration, Judge Young withdrew his order and recused himself from the case.

Subsequently, a second hearing was held off the record in Judge Buckner's chambers. Judge Buckner issued an order

---

5. Fairchild argues Palmer lacks standing to appeal the trial court's ruling on the motion for an IME because he is not an aggrieved party. Specifically, Fairchild contends Palmer was not denied a personal right by the trial court because the court granted him the right to an IME of Fairchild, and because Palmer was not entitled to have the IME performed by a specific physician. Fairchild relies on Rule 201(b), SCACR, which states "only a party aggrieved by an order, judgment, sentence or decision may appeal." Fairchild also relies on *First Union National Bank of South Carolina v. Soden,* 333 S.C. 554, 565, 511 S.E.2d 372, 378 (Ct.App.1998) in which this court found:

An aggrieved party is one who is aggrieved by the judgment or decree when it operates on his rights of property or bears directly on his interest, the word aggrieved referring to a substantial grievance, a denial of some personal or property right, or the imposition on a party of a burden or obligation. A party cannot appeal from a decision which does not affect his interest, however erroneous and prejudicial it may be to the rights and interests of some other person.

Fairchild's argument lacks merit because the trial court's denial of Palmer's motion for an IME by Dr. Ballenger "bears directly on his interest."

stating Palmer met the requirements of Rule 35(a), but Dr. Ballenger could not perform the exam because he was an expert witness for Palmer and had reviewed Fairchild's medical records. The order further stated there was no finding of bias on the part of Dr. Ballenger, but another physician who had not reviewed the records and had not been retained as an expert witness should perform the examination. The order gave Palmer the opportunity to submit alternate psychiatrists to perform the exam, but Palmer was unwilling to pay for another physician. Therefore, the trial court denied Palmer's motion to have Dr. Ballenger perform an IME of Fairchild. At trial, the court again stated that the motion for Dr. Ballenger to perform the IME was denied not because of Dr. Ballenger's qualifications or whether he was biased, but because he was listed as an expert witness in Palmer's discovery responses. The trial court further stated that "independent means independent and that means no witness has previously been identified by the Plaintiff or the Defendant gives the independent medical exam."

Palmer argues Fairchild failed to raise a reasonable objection to his motion requesting Dr. Ballenger perform the IME. According to Rule 35(a) (*emphasis added*):

In any case in which the amount in controversy exceeds $100,000 actual damages, and the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made, and shall be delivered to the person or persons making the examination.

The physician of the party to be examined may be present at the examination. Unless the parties agree, or the court for good cause shown determines otherwise, the examination shall be in the county where the person to be examined, or his physician, resides. Special consideration shall be

given to the convenience of the person to be examined and that of his physician in setting the time and place of the examination, and reasonable consideration shall be given to the convenience of the examining physician. *Upon reasonable objection to the physician designated to make the examination, and if the parties shall fail to agree as to who shall make the examination, the court may designate a physician; but the fact that a physician was so designated shall not be admissible upon the trial.*[6]

Per Rule 35, the court may designate a physician to perform a mental or physical examination upon a reasonable objection to the physician previously selected. Here, we find Fairchild had a reasonable basis to object to Dr. Ballenger because he had a pre-existing relationship with Palmer. Dr. Ballenger was listed as an expert witness for the defense and had reviewed Fairchild's medical records. We believe such a role and his previous involvement warrants a reasonable objection for the trial court to sustain. *See Main v. Tony L. Sheston–Luxor Cab Co.,* 249 Iowa 973, 89 N.W.2d 865, 868 (1958) (affirming the trial court's ruling sustaining the plaintiff's objection to the defendant's choice of physician to perform an IME because the physician was a client of defense counsel); *Adkins v. Eitel,* 2 Ohio App.2d 46, 206 N.E.2d 573, 575 (1965) (holding the trial court abused its discretion in ordering the plaintiff to submit to a medical examination by a physician who was a neighbor and client of defense counsel); *see also Powell v. U.S.,* 149 F.R.D. 122, 124 (E.D.Va.1993) (citing *Adkins,* 206 N.E.2d at 575 and *Main,* 89 N.W.2d at 868) (noting a social, business, or attorney-client relationship between a physician and defense counsel would have been the basis for a valid objection to a physician selected to perform a medical examination). Accordingly, we find the trial court did not abuse its discretion by denying Palmer's motion for an IME by Dr. Ballenger and affirm its decision.

## V. Directed Verdict

Finally, Palmer argues the trial court erred in directing a verdict for Fairchild on the issue of comparative

---

**6.** The second paragraph of Rule 35, SCRCP, is not a part of the federal rule.

negligence. Specifically, Palmer contends Fairchild did not take sufficient measures to avoid the accident. Based on Fairchild's conduct, Palmer maintains the jury should have been permitted to consider whether Fairchild acted negligently. Fairchild maintains there is no factual issue about her conduct from which a jury could have reasonably concluded she was comparatively negligent.[7] We agree with Fairchild.

When evidence presented at trial yields only one conclusion concerning liability, the trial court may properly grant a motion for directed verdict. *See Ecclesiastes Prod. Ministries v. Outparcel Assocs.*, 374 S.C. 483, 490, 649 S.E.2d 494, 497 (Ct.App.2007) ("A motion for directed verdict goes to the entire case and may be granted only when the evidence raises no issue for the jury as to liability."). So long as no more than one inference is created from the evidence presented, a jury issue is not created, and the trial court is proper in directing a verdict. *Henson v. Int'l Paper Co.*, 358 S.C. 133, 147, 594 S.E.2d 499, 506 (Ct.App.2004) (holding when the evidence is susceptible of more than one reasonable inference, a jury issue is created and the court may not grant a directed verdict).

Palmer argues Fairchild "flashing" her brakes was not a sufficient warning to the traffic behind her. He contends Fairchild's testimony that she coasted for a quarter of a mile before the accident could reasonably be construed to mean that she was decelerating without the warning of her brake lights to the traffic behind her. Furthermore, Palmer argues Fairchild failed to take adequate measures to prepare for the oncoming hazard and thus she was forced to make an abrupt stop. Therefore, Palmer contends the question of Fairchild's negligence was for the jury to decide.

Fairchild maintains her testimony indicates she never took her foot off the brake as she approached the trailer. She argues motorists do not have a duty to apply their brakes in a

---

7. Fairchild argues Palmer failed to make a proper post-trial motion, and therefore, the comparative negligence issue is not properly before the court. Specifically, Fairchild maintains Palmer never asked the trial court for a new trial or cited any error with respect to its ruling on comparative negligence. At the close of the evidence, the trial court granted Fairchild's motion for a directed verdict. We believe this issue is properly before the court because it was raised to and ruled upon by the trial court.

certain way to adequately warn other motorists. Fairchild contends the testimony at trial indicated Palmer saw her slowing down immediately after the cars in front of them moved to the right lane and he began applying his brakes because he realized she was slowing down. Moreover, Fairchild notes Palmer admitted in his testimony she made a safe choice in operating her vehicle under the circumstances.

 "In order to establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Snavely v. AMISUB of S.C., Inc.*, 379 S.C. 386, 394, 665 S.E.2d 222, 226 (Ct.App.2008). A plaintiff may only recover damages if his own negligence is not greater than that of the defendant. *Id.* A determination of the degrees of negligence attributable to the plaintiff and the defendant presents a question of fact for the jury to decide. *Id.* at 394–95, 665 S.E.2d at 226. "In a comparative negligence case, the trial court should grant a motion for directed verdict if the sole reasonable inference from the evidence is that the non-moving party's negligence exceeded fifty percent." *Hurd v. Williamsburg County*, 363 S.C. 421, 429, 611 S.E.2d 488, 492 (2005).

As Fairchild notes, under South Carolina law, motorists do not have a duty to apply their brakes in a certain way to adequately warn other motorists. According to section 56–5–2150(c) of the South Carolina Code (2006): "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." Appropriate signals are defined as hand signals and signal lamps. S.C.Code Ann. § 56–5–2180(a) (2006).

Fairchild testified at trial and in her deposition that she "flashed" her brakes to indicate to the motorists behind her she may have to stop. She further testified she had her foot on the brake as she continued to coast in order to stay ahead of the car behind her and not hit the trailer obstructing the highway. While Fairchild testified she accelerated after twice applying the brakes in order to say ahead of the traffic behind

her, the evidence indicates she properly signaled she was slowing down and preparing to stop. Moreover, Palmer testified he saw Fairchild's brake lights after the cars between his and Fairchild's moved to the right lane. Palmer also testified Fairchild made the safe choice when she slowed down, signaled to traffic behind her, maintained control of her vehicle, and avoided impact with the trailer. Therefore, the evidence in the record indicates Fairchild did not breach her duty to signal to the motorists traveling behind her when she was slowing down and preparing to stop.

Palmer also argues Fairchild saw the trailer obstructing the road and did not take sufficient measures to avoid it until the last possible moment. Palmer contends it was improper for Fairchild to coast for a quarter of a mile down the highway and that a reasonable jury could have concluded Fairchild saw the hazard ahead and did not react properly. Evidence in the record indicates Fairchild saw the trailer in the roadway and slowed down to avoid impact. Palmer presented no evidence indicating Fairchild should have reacted differently when she saw the trailer blocking her lane of the highway. Moreover, motorists in South Carolina are not under any duty to apply their brakes in a certain way when slowing down. Thus, because Palmer failed to offer evidence Fairchild violated traffic laws, was speeding or following too closely, or any other evidence to support an inference of negligence, we affirm the trial court's grant of a directed verdict on the issue of comparative negligence. *See Hurd,* 363 S.C. at 429, 611 S.E.2d at 492 ("In a comparative negligence case, the trial court should grant a motion for directed verdict if the sole reasonable inference from the evidence is that the non-moving party's negligence exceeded fifty percent.").

## CONCLUSION

We reverse the trial court's decision not to instruct the jury on the substance of Fairchild's requested charges and reverse and remand this case for a new trial. Further, we also find the trial court erred in directing a verdict in favor of Palmer on punitive damages. Accordingly, on remand, the trial court should submit punitive damages to the jury. Because reversing the trial court on its failure to instruct the jury on certain charges will result in a new trial, we do not need to address

whether the trial court erred in refusing to grant a new trial absolute or a new trial *nisi additur*. We affirm the trial court's decision regarding the IME and affirm the trial court's decision to direct Fairchild's verdict on comparative negligence. The decision of the trial court is therefore

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

HEARN, C.J., and PIEPER, J., concur.