709 S.E.2d 122

**Danny R. PRINCE, Respondent,**

v.

**BEAUFORT MEMORIAL HOSPITAL and its Employees, Servants and Agents, Appellants.**

**No. 4811.**

Court of Appeals of South Carolina.

Heard June 23, 2010.
Decided March 23, 2011.
Rehearing Denied May 31, 2011.

James S. Gibson, Jr., and Mary Bass Lohr, both of Beaufort, for Appellants.

T. Wayne Yarbrough, of Bluffton, for Respondent.

CURETON, A.J.

Beaufort Memorial Hospital (Hospital) appeals from the trial court's decision declaring certain contents of its Quality Assurance Committee (QAC) file discoverable and ordering a new trial. We reverse.

## FACTS

In February 1999, Danny R. Prince was admitted to Hospital's care after suffering a work-related injury. On February 17, 1999, Prince was discovered after falling to the roof of the hospital building, one floor below his room's window. Prince sustained additional injuries but did not remember the incident. Hospital's QAC investigated the incident and maintained a file of the information it assembled.

Prince sued Hospital under the Tort Claims Act for his injuries and sought disclosure of the QAC file. Hospital claimed the contents of the file were confidential pursuant to sections 40–71–10 and –20 of the South Carolina Code (2001 & Supp.2004), and the trial court agreed.[1] On January 8, 2004, a jury returned a verdict in favor of Hospital. Prince appealed (Prince's Appeal), seeking disclosure of the QAC file and a new trial. This court remanded the matter to the trial court for an in camera review of the QAC file and a determination whether its contents were indeed confidential under section 40–71–20.[2] *See Prince v. Beaufort Mem. Hosp.*, Op. No.2005–UP–602 (S.C. Ct.App. refiled Apr. 11, 2006).

---

1. According to Judge Alexander S. Macaulay's order dated November 22, 2008, Judges Jackson V. Gregory and Curtis L. Coltrane declared documents from the QAC file confidential in five separate orders. Judge Macaulay authored the orders from which appeal was taken in this case.

2. In 2005, the General Assembly enacted section 40–71–30 of the South Carolina Code, which provides for the trial court to conduct an in camera review of any documents a party claims are confidential under section 40–71–10 and –20.

Upon remand from Prince's Appeal, the trial court reviewed the QAC file in camera and found it "manifestly clear" that Hospital had used some contents of the file to answer Prince's interrogatories. The trial court found both Hospital's answers to interrogatories and the "small portions of the witness statement summaries" that were not repeated in those answers were relevant to the dispute. In its analysis, the trial court compared hospital-patient confidentiality to the attorney-client privilege, finding the client alone has the power to waive the privilege. Furthermore, the trial court observed a client's voluntary disclosure of one privileged communication waives the privilege as to all attorney-client communications on the same subject. Relying on the attorney-client privilege and the Rule of Completeness,[3] the trial court ordered the entire QAC file be unsealed and provided to Prince.

Hospital appealed (Hospital's First Appeal), arguing Prince had failed to preserve his argument that Hospital had waived confidentiality and the trial court had exceeded its authority by ruling on the issue of waiver. This court agreed with Hospital and again remanded the matter to the trial court, instructing the trial court to "set forth the specific portions of the [QAC] file that are subject to discovery as well as the reasons these portions are not confidential under section 40–71–20." *See Prince v. Beaufort Mem. Hosp.*, Op. No.2008–UP–139 (S.C. Ct.App. filed Mar. 3, 2008).

Upon remand from Hospital's First Appeal, the trial court reviewed the contents of the QAC file and found most documents in the file were discoverable under the statute because the information in them was otherwise available from the original sources. The trial court found one document[4] partic-

---

3. The trial court cited to *State v. Cabrera–Pena*, 361 S.C. 372, 378, 605 S.E.2d 522, 525 (2004) (recognizing introduction of defendant's incriminating statements to police officer required that defendant's remaining statements be considered for purposes of explanation or qualification). In addition, the trial court pointed to Rule 106, SCRE (permitting an adverse party, upon introduction of a writing or statement, to require introduction of any other writing that should "in fairness ... be considered contemporaneously with it"), and Rule 32(a)(4), SCRCP (permitting introduction of additional deposition testimony at trial to ensure fairness when a party initially offers only part of the testimony).

4. The trial court identified the document as Item 15, "Handwritten Notes: (Mary Dent, Jennifer Emerick, chronology of that night)[2

ularly problematic because the information in it differed from other evidence obtained from the same nurse. The trial court reasoned: "When deposition and trial testimony varies from, or is inconsistent with, that given to the committee, the statutory protection should not be inimical to safeguarding the integrity of the fact finding process." Furthermore, the trial court found that because Prince had no memory of the incident, Hospital and its investigators were "the *only source* of information as to what occurred the night of the subject incident." As a result, the trial court ordered both the original and the copy of the QAC file,[5] except for two attorney-client privileged items, unsealed and produced to Prince. Hospital filed a motion for reconsideration, which the trial court denied. Hospital appealed, arguing the trial court erred by misinterpreting the scope of its review and by misapplying section 40–71–20.

Following oral arguments in June 2010, this court instructed the parties to brief the following issues:

1. Whether on remand, the trial court had the authority, pursuant to this court's remand orders to consider any conflict between Jennifer Emerick's deposition or trial testimony, the hospital's answers to interrogatories and the QAC file?

2. Did any conflict between Jennifer Emerick's deposition or trial testimony, the hospital's answers to interrogatories and the QAC file or the failure to disclose it to the court or opposing counsel warrant a new trial?

The parties submitted supplemental briefs, a new record on appeal, and a supplemental record on appeal.

## STANDARD OF REVIEW

The decision whether to grant or deny a new trial rests within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Fields v. J.*

---

pages]." In its order dated November 22, 2008, the trial court enumerated and described the twenty-two documents contained in the QAC file.

5. The trial court's clerk's office misplaced the original QAC file, and Hospital replaced it with a copy. Later, the trial court located the original QAC file.

*Haynes Waters Builders, Inc.,* 376 S.C. 545, 569, 658 S.E.2d 80, 93 (2008). A trial court abuses its discretion by issuing a decision that is either controlled by an error of law or unsupported by the evidence. *Fairchild v. S.C. Dep't of Transp.,* 385 S.C. 344, 350, 683 S.E.2d 818, 821 (Ct.App.2009).

## LAW/ANALYSIS

### I. Trial Court's Review

#### A. Authority under Remand Order

Hospital argues the trial court erred by exceeding its authority under this court's remand order. We agree.

■ "[A] trial court has no authority to exceed the mandate of the appellate court on remand." *S.C. Dep't of Soc. Servs. v. Basnight,* 346 S.C. 241, 250–51, 551 S.E.2d 274, 279 (Ct.App.2001) (citing 5 Am.Jur.2d *Appellate Review* § 784, at 453 (1995)). The mandate of the appellate court is jurisdictional. *Id.* The trial court has a duty to follow the appellate court's directions. *Ackerman v. McMillan,* 324 S.C. 440, 443, 477 S.E.2d 267, 268 (Ct.App.1996).

■ We reverse the trial court's order requiring Hospital to release the contents of the QAC file to Prince. When we remand a case, the trial court has only the jurisdiction and authority mandated by this court. *Basnight,* 346 S.C. at 250–51, 551 S.E.2d at 279. Upon remand following the Hospital's First Appeal, this court instructed the trial court to "set forth the specific portions of the [QAC] file that are subject to discovery as well as the reasons these portions are not confidential under section 40–71–20." *Prince v. Beaufort Mem. Hosp.,* Op. No.2008–UP–139 (S.C. Ct.App. filed Mar. 3, 2008). As a result, the trial court's jurisdiction extended only to a review of each document contained in the QAC file in light of the statute.

■ Instead of reviewing the documents in the QAC file solely in light of the statutory provisions, the trial court based its decision to unseal the QAC file on three factors: (1) the availability of some information from original sources, (2) the conflict of information in Item 15 with Nurse Emerick's trial testimony, and (3) Hospital's apparent use of certain confiden-

tial documents in preparing its responses to discovery. We address the trial court's first factor separately below. The trial court's second factor, a conflict between trial testimony and information in the QAC file, was beyond the scope of the trial court's authority on remand. *See Basnight*, 346 S.C. at 250–51, 551 S.E.2d at 279 ("[A] trial court has no authority to exceed the mandate of the appellate court on remand."). Following Hospital's First Appeal, this court instructed the trial court to "set forth the evidence in the [QAC] file that is subject to discovery and ... explain why, consistent with the language in this Court's prior opinion, this evidence 'is not protected by the confidentiality statute.'" *Prince*, Op. No.2008–UP–139 (S.C. Ct.App. filed Mar. 3, 2008). By comparing documents in the QAC file with trial testimony, the trial court impermissibly exceeded the scope of its authority.

▮ Furthermore, Prince's arguments to the contrary are unpersuasive. A court may not, as he argues, exceed its authority and assume the role of a second jury. Rather, the appellate court's instructions circumscribe the trial court's authority on remand. *Basnight*, 346 S.C. at 250–51, 551 S.E.2d at 279. The trial court's duty is to follow the instructions it received from the appellate court. *Ackerman*, 324 S.C. at 443, 477 S.E.2d at 268.

▮ The trial court's third factor, Hospital's apparent use of documents from the QAC file in answering discovery, was not properly before the trial court on remand. "Matters decided by the appellate court cannot be reheard, reconsidered, or relitigated in the trial court, even under the guise of a different form." *Id.* In essence, the trial court found Hospital waived any statutory confidentiality by utilizing these documents to prepare discovery responses. However, in Hospital's First Appeal, this court found no issue regarding waiver had been preserved and appealed. *Prince*, Op. No.2008–UP–139 (S.C. Ct.App. filed Mar. 3, 2008). Specifically, our opinion expressly disagreed with the trial court's holding that the issue of waiver was necessarily so intertwined with the issue of confidentiality as to require concurrent consideration. Instead, we held that "the remand instructions did not authorize the trial court to consider whether Hospital had waived its right to assert the file was confidential." Prince did not seek

review of this finding by our supreme court, and the boundaries of the trial court's authority on remand did not permit it to contemplate waiver arguments. *See Ables v. Gladden,* 378 S.C. 558, 569, 664 S.E.2d 442, 448 (2008) (holding an unappealed ruling is the law of the case). Accordingly, the trial court erred in considering Prince's waiver argument.

## B. Analysis of the QAC File's Contents in Light of the Statute

█ On remand following Hospital's First Appeal, this court directed the trial court to determine whether and, if so, why any documents in the QAC file were discoverable under section 40–71–20. The trial court based the first factor it used in reviewing the contents of the QAC file on section 40–71–20. Hospital originally argued on appeal that the trial court erred by misapplying section 40–71–20. We agree.

Hospital medical staff on a committee conducting peer reviews of patient medical and health records are protected from tort liability for their work if they "act[ ] without malice, [make] a reasonable effort to obtain the facts relating to the matter under consideration, and act[ ] in the belief that the action [they take] is warranted by the facts known to [them]." S.C.Code Ann. § 40–71–10(B) (Supp.2009). Both the information they collect and any investigative documents they generate are confidential:

> All proceedings of and all data and information acquired by the committee referred to in [s]ection 40–71–10 in the exercise of its duties are confidential unless a respondent in the proceeding requests in writing that they be made public. These proceedings and documents are not subject to discovery, subpoena, or introduction into evidence in any civil action except upon appeal from the committee action. Information, documents, or records which are otherwise available from original sources are not immune from discovery or use in a civil action merely because they were presented during the committee proceedings, nor shall any complainant or witness before the committee be prevented from testifying in a civil action as to matters of which he has knowledge apart from the committee proceedings or revealing such matters to third persons.

S.C.Code Ann. § 40–71–20(A) (Supp.2009).[6] Our supreme court has examined this statute and found the General Assembly intended it to:

> [E]ncourage health care professionals to monitor the competency and professional conduct of their peers to safeguard and improve the quality of patient care. The underlying purpose behind the confidentiality statute is not to facilitate the prosecution of civil actions, but to promote complete candor and open discussion among participants in the peer review process.... We find that the public interest in candid professional peer review proceedings should prevail over the litigant's need for information from the most convenient source.

*McGee v. Bruce Hosp. Sys.*, 312 S.C. 58, 61–62, 439 S.E.2d 257, 259–260 (1993) (internal citations omitted); *accord Durham v. Vinson*, 360 S.C. 639, 646, 602 S.E.2d 760, 763 (2004).

The trial court's misconstruction of this law supports our decision to reverse as well. Following Prince's Appeal, this court instructed the trial court to "conduct an in camera review of the [QAC] file ... [and] decide whether the file warrants confidentiality." *Prince v. Beaufort Mem. Hosp.*, Op. No.2005–UP–602 (S.C. Ct.App. refiled Apr. 11, 2006). Following Hospital's First Appeal, this court instructed the trial court "to set forth the evidence in the [QAC] file that is

---

6. The current version of subsection (A) differs little from the entirety of the statute in effect at the time of trial. The amendments do not affect the disposition of this appeal. The version in effect at trial, S.C.Code Ann. § 40–71–20 (Supp.2004), provided:

> All proceedings of and all data and information acquired by the committee referred to in [s]ection 40–71–10 in the exercise of its duties are confidential unless a respondent in the proceeding requests in writing that they be made public. These proceedings and documents are not subject to discovery, subpoena, or introduction into evidence in any civil action except upon appeal from the committee action. Information, documents, or records which are otherwise available from original sources are not immune from discovery or use in a civil action merely because they were presented during the committee proceedings nor shall any complainant or witness before the committee be prevented from testifying in a civil action as to matters of which he has knowledge apart from the committee proceedings or revealing such matters to third persons. Confidentiality provisions do not prevent committees appointed by the Department of Health and Environmental Control from issuing reports containing solely nonidentifying data and information.

subject to discovery and to explain why, consistent with the language in this Court's prior opinion, this evidence 'is not protected by the confidentiality statute.'" *Prince v. Beaufort Mem. Hosp.*, Op. No.2008–UP–139 (S.C. Ct.App. filed Mar. 3, 2008). In each case, this court predicated the trial court's order of a new trial upon its findings concerning confidentiality and the relevance of any QAC information deemed not confidential.

This court found that the QAC met the qualifications for protection under section 40–71–10 and that "Prince failed to appeal the trial court's refusal to consider his argument that Hospital had waived its protection under section 40–71–20." *See id.* Neither party appealed these rulings. Therefore, these determinations are the law of the case. *See Ables*, 378 S.C. at 569, 664 S.E.2d at 448 (holding an unappealed ruling is the law of the case). Section 40–71–10 establishes ground rules for the conduct of the QAC members in performing their duties. Section 40–71–20 confers confidentiality upon information gathered by the QAC "in the exercise of its duties."

Despite this court's instructions upon remand, the trial court omitted any evaluation of Hospital's claims of confidentiality in light of these provisions. The trial court failed to make any finding of fact whether the QAC had acquired the documents in its file "in the exercise of its duties." *See* § 40–71–20(A). Neither did the trial court evaluate whether, in assembling the information in this file, the QAC members "act[ed] without malice, [ ] made a reasonable effort to obtain the facts relating to the matter under consideration, and act[ed] in the belief that the action [they took was] warranted by the facts known to [them]." *See* § 40–71–10(B). Accordingly, the trial court erred by failing to conduct the analysis directed by this court prior to unsealing the QAC file and ordering a new trial.

The trial court's first factor represents a misapplication of section 40–71–20(A). Section 40–71–20(A) establishes confidentiality for information gathered by the QAC in the performance of its duties. However, it excepts from this coverage information that is "otherwise available from original sources." In examining this provision, our supreme court stated: "the statute does not protect information *if obtained*

*from alternative sources.* Hence, the plaintiff seeking discovery cannot obtain documents which are available from the original source directly from the hospital committee, but may seek them from alternative sources." *McGee,* 312 S.C. at 62–63, 439 S.E.2d at 260 (emphasis added). Here, the trial court held the documents within the QAC file were not confidential because Prince could obtain the information within them from the original sources. According to our supreme court, this interpretation is incorrect. While documents prepared by the QAC remain confidential, Prince is free to obtain the information within them from the original sources. To the extent the QAC obtained documents from other sources during the course of its investigation, Prince may seek copies of those documents from the original sources but not from the QAC file. *See id.* Consequently, the trial court misinterpreted and misapplied section 40–71–20.

In summary, the trial court based its ruling upon a comparison of evidence beyond the scope of its authority on remand, an argument this court previously held was not properly before the trial court, and a misconstruction of section 40–71–20. Accordingly, we find the trial court abused its discretion in ordering the QAC file disclosed.

## II. New Trial

Hospital next argues the trial court erred in granting a new trial based upon a conflict in evidence. We decline to reach this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal). The trial court's decision to disclose the QAC file was the sole basis for granting a new trial. Our reversal herein of the trial court's decision to disclose the QAC file removes that basis.

## III. Prince's Remaining Arguments

Prince advances a number of arguments in his Supplemental Brief and, in a prayer for relief contained in the conclusion of that brief, seeks additional sanctions against Hospital. For the reasons outlined below, we decline to address these arguments and requests.

We decline to address Prince's request for his costs on appeal as premature. *See* Rule 222(d), SCACR (requiring a party seeking costs to file his motion for costs within fifteen days of the issuance of the remittitur). Consequently, this request is not properly before the court.

 We decline to address Prince's remaining issues, including attorney's fees for work performed at the trial level, as unpreserved. "It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." *Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). Because Prince failed to procure a ruling from the trial court on any of these issues, they are unpreserved for appellate review.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's decision disclosing the QAC file and granting Prince a new trial. We reinstate the decision of Judge Gregory.

**REVERSED.**

THOMAS, J., concurs.

FEW, C.J., concurring.

I concur in the majority's reasoning and conclusion that the QAC file meets the criteria for confidentiality under the peer-review privilege found in sections 40–71–10 and –20. That question is resolved, and no further inquiry into the QAC file's confidentiality under these sections is necessary.

However, this third appeal brings before our court for the first time a document contained in the QAC file, item 15. Item 15 is a series of notes made by the Hospital risk manager from interviews with Nurse Jennifer Emerick and others, including the statements that Nurse Emerick was afraid of Prince and thought he was at risk for elopement.[7]

7. "Elopement," as the trial court noted in a footnote to its December 1, 2008 order, is defined as an "attempt to exit a facility unaccompanied." Kelly J. Taylor, RN, JD, "Resident Elopement: Managing the Liability

While the document on which the statements are recorded is protected from disclosure under the peer-review privilege, the statements themselves are not. *McGee v. Bruce Hosp. Sys.*, 312 S.C. 58, 62, 439 S.E.2d 257, 260 (1993) (holding peer-review "statute does not protect information if obtained from alternative sources").

I have substantial concerns about what should be done with this newly discovered evidence. The statements, which were revealed to the trial court only after remand from Prince's appeal, served as the basis for the trial court's June 22, 2006 order that the peer-review privilege had been waived. However, the order did not contain the content of item 15.[8] The record on the appeal from that order also did not contain the content of item 15. Therefore, this court did not know what the trial court knew when we reversed the finding of waiver and remanded again for the trial court to examine the validity of the peer-review privilege. The trial court's December 1, 2008 order, however, does reveal the content of item 15. The order demonstrates that the reason the trial court exceeded the mandate from this court was the trial court's concern over how to handle the troubling revelation of item 15. Because I share the trial court's concern, I write separately to address it.

The central issue in this case is whether Hospital knew or reasonably should have known that Prince posed a danger to himself, and in particular whether Hospital was on notice of any reasonable likelihood of elopement. Nurse Emerick's statements recorded in item 15 relate directly to that central issue. In pretrial discovery, Prince served Hospital with an interrogatory almost identical to the standard interrogatory set forth in Rule 33(b)(7), SCRCP. In response to the interrogatory, Hospital gave a detailed account of Nurse Emerick's involvement with and her observations of Prince. The interrogatory answer does not mention Nurse Emerick being afraid of Prince nor any thought that he was at risk for elopement.[9] Prince later took Nurse Emerick's deposition,

---

Risks of Wandering," Carefully Speaking, Winter 2002, Volume 7, Issue 1.

8. This court noted in its opinion on Hospital's First Appeal that the June 22, 2006 order "does not describe the evidence...."

9. The interrogatory and answer read:

which was published at trial, in which counsel asked her a series of questions about her observations of Prince and what concerns she had for his safety in the hours leading up to his fall. The questions repeatedly put Nurse Emerick to the task of explaining what she observed and what conclusions she reached in relation to the risk that Prince might harm himself by leaving the hospital room without authorization. In response to these questions, Nurse Emerick did not disclose that she was afraid of Prince or that she thought he was at risk for elopement. In fact, she specifically stated "he wasn't threatening himself or the staff," and "he was not a threat to me or my staff and himself." During the portion of the deposition in which counsel for Hospital questioned Nurse Emerick, which also was published at trial, the following exchange occurred:

Q: And you testified earlier that if you thought that he was a danger to you or the staff or anybody else, then you would have called security?

A: Yes.

Q: If nothing else, for your own protection?

A: Right.

* * *

Q: Did you think he was a danger to himself or others when you left the room—I'm sorry. You didn't think that

3. For each person known to the parties or counsel to be a witness concerning the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witnesses, or provide a copy of any written or recorded statements taken from such witnesses.

Answer: ...

Jennifer Emerick was the nurse providing care for Mr. Prince on the evening of the occurrence. She noted around 8:30 that he was shaking and weak, and she suspected that the patient may have DTs. At 9:30 Mr. Prince called and asked for his temperature to be taken; it was 100.9. She established that somewhere between 9:45 and 10:00 that Dr. McNeil saw the patient and advised Ms. Emerick that the patient looked fine. Around 10:30, she noticed that the patient was shaking visibly and exhibiting strange behavior. She had ordered medications for the patient that had not come up from the pharmacy. At 11:15 when the patients' med arrived, Jennifer Emerick went into the room to administer them to the patient, and the patient was gone, the IV pump was running and she noticed the window was open; she glanced out the window, but did not see the patient. She was going to report to security when she was notified that there was a patient on the roof of the third floor.

he was a danger to himself or others, and so you left the room?

A: Correct.

Nurse Emerick's answers to these questions are not consistent with the statement she previously gave to the Hospital risk manager, as recorded in item 15: "Was a little afraid of him. Thought he was at risk for elopement." In the December 1, 2008 order, the trial court called the inconsistency "most troubling." The trial court went on to explain:

> Never was the Plaintiff made aware that the note the Risk Manager ... [made] from her interview, indicated that Nurse Emerick: "Was a little afraid of him. Thought he was at risk for elopement." Nevertheless, everything else addressed in that note was disclosed to the Plaintiff in the defendants' Answers to Interrogatories....

After referring to several authorities on the importance of the disclosure of information relating to witness credibility, the trial court stated:

> The instant case is not one where it is just "the litigant's need for information from the *most convenient source*," *McGee v. Bruce Hosp., supra* (emphasis supplied). As the Court of Appeals recognized, "Prince had no memory of the incident, and the only investigative body was the Hospital, a naturally biased entity." [10] Therefore, the Hospital and its investigators—who "acquired" the information and have sought the protection of the statutory privilege—are the only source of information as to what occurred the night of the subject incident.

I share the trial court's concern. The peer-review privilege under sections 40–71–10 and –20 protects only the documents in the peer-review file. The existence of a valid privilege does not permit counsel to remain silent when the privilege has protected from disclosure the only evidence available that a witness has testified untruthfully. The peer-review privilege was never intended to allow a party to conceal that a witness has testified untruthfully on the central issue in a case.

---

**10.** The trial court is quoting this court's opinion in *Prince v. Beaufort Mem. Hosp.*, Op. No.2008–UP–139 at 6 (S.C. Ct.App. filed March 3, 2008).

The issue before this court in this third appeal is a narrow one. The panel has determined that the legal consequences of the newly discovered evidence I have discussed above, and in particular the answer to the second question we instructed the parties to brief after oral arguments, are beyond the scope of this appeal. These consequences must be addressed, if at all, in a separate proceeding before the circuit court under Rule 60(b)(2), SCRCP. However, I am sufficiently troubled by what I have seen that I could not let these facts go unnoted, nor my concern over these events unspoken.