0422

Wesley E. MERRITT, Respondent, v. William H. GRANT, Appellant.
(328 S. E. (2d) 346)

Court of Appeals

152

*Forrest C. Wilkerson,* of *Roddey, Carpenter & White, P. A.,* Rock Hill, *for appellant.*

*Charles B. Burnette, III,* and *Charles B. Ridley, Jr.,* of *Ridley, Ridley & Burnette,* Rock Hill, *for appellant.*

Heard Dec. 17, 1984.

Decided March 20, 1985.

*Per Curiam:*

The respondent Wesley E. Merritt brought this action against the appellant William H. Grant to recover damages for the personal injuries he sustained as a result of an automobile accident. The jury awarded Merritt $77,500 in actual damages and $10,000 in punitive damages. We affirm and remand.

Grant's appeal raises the following issues: (1) whether Merritt was guilty of gross contributory negligence as a matter of law; (2) whether the trial judge abused his discretion in refusing to allow Grant's counsel to ask Grant leading questions on cross-examination; (3) whether the trial judge abused his discretion in refusing to permit Grant to introduce evidence of Merritt's conviction of a drug offense; and (4) whether the trial judge erred in refusing requests to charge and an additional request to charge concerning a duty of an automobile passenger, contributory negligence, and voluntary intoxication.

Grant met Merritt after work on Friday, March 7, 1980, between 6:00 and 6:30 p.m. at a tavern called "Daddy's Money." They left the bar sometime after 7:00 p.m. to go to Grant's house to watch a basketball game on television. On the way, they went by Merritt's home to pick up some clothes and stopped at a convenience store to purchase a six-pack of beer. Upon arriving at Grant's place, they showered, changed clothes, and watched the game. At about 10:30 p.m., they returned to Daddy's Money.

Grant and Merritt remained at Daddy's Money until approximately 1:30 or 2:00 Saturday morning. From there, they drove about eight miles to another tavern near Fort Mill called the "Sportsman Club." Once at the Sportsman, they started playing cards. About an hour later, Merritt got the car keys from Grant, lay down in the car, and went to sleep. Grant remained inside and continued to play cards. Sometime after 5:00 a.m., Grant decided to return to Rock Hill.

When Grant came out to the car, Merritt woke up long enough to give Grant the keys. He then went back to sleep. Grant got into the car and drove toward Rock Hill.

After coming into Rock Hill, Grant fell asleep and almost ran over the median in the highway. Rather than stop the car,

Grant continued to drive. He managed to go another block and a half before falling asleep again. At 5:40 a.m., Grant drove off the highway and struck a telephone pole. Merritt woke up in the hospital.

Over the course of the night, Merritt consumed between seven and nine beers and Grant consumed between six and eight beers.

I.

Grant contends the trial judge should have either directed a verdict in his favor or granted his motion for judgment notwithstanding the verdict because the only reasonable inference to be drawn from all the evidence is that Merritt's gross contributory neligence proximately caused his injuries.

Inasmuch as the jury returned a veredict for both actual and punitive damages, the verdict constituted under the trial judge's instructions a finding by the jury that on the occasion in question Grant was guilty of wilful, wanton, or reckless conduct. Contributory negligence, therefore, would be no defense. *Oliver v. Blackeney*, 244 S. C. 565, 137 S. E. (2d) 772 (1964); *Dawson v. S. C. Power Co.*, 220 S. C. 26, 66 S. E. (2d) 322 (1951).

In neither his motion for directed verdict nor his motion for judgment notwithstanding the verdict did Grant urge gross contributory negligence as a ground. Both motions were based upon contributory negligence alone. The issue concerning gross contributory negligence, therefore, is not properly before us. *Lawson v. Producers' and Refiners' Corp. of Tenn.*, 157 Tenn. 455, 9 S. W. (2d) 1026 (1928); 75 Am. Jur. (2d) *Trial* Section 470 at 488-89 (1974); *see Jensvold v. Chicago, Great Western R. Co.*, 236 Iowa 708, 18 N. W. (2d) 616 (1945); Annot., 69 A.L.R. (2d) 449, Sections 14 and 20 at 484 and 501 (1960); *cf.* JUDICIAL COUNCIL OF S. C., PROPOSED S.C.R. CIV.P. 50(a) October, 1984) ("A motion for directed verdict shall state the specific grounds therefor").

Even if the issue were properly before us, we hold Grant was neither entitled to a directed verdict nor to a judgment notwithstanding the verdict.

For Grant to be entitled to either a directed verdict or judgment notwithstanding the verdict, the evidence must

conclusively establish that Merritt was guilty of gross contributory negligence as a matter of law. *See Funderburk v. Powell,* 181 S. C. 412, 187 S. E. 72 (1936). It does not do so.

Grant argues that the evidence shows Merritt was guilty of gross contributory negligence as a matter of law in voluntarily riding with Grant and in falling asleep because Merritt knew or should have known Grant was intoxicated and suffering from fatigue at the time. Grant points to evidence indicating Merritt knew Grant had consumed several beers while he was with Merritt and was aware Grant had worked all day Friday.

Grant overlooks, however, evidence favorable to Merritt. Merritt testified that as they rode over to the Sportsman Club Grant's driving was "perfect" and "just fine." He also testified Grant "looked fine" and was "wide awake" when Merritt later got the keys from him. The evidence is uncontroverted that Grant did not have anything to drink other than coffee after he and Merritt reached the Sportsman Club. Grant's own testimony is that he was sober when they arrived at the Sportsman Club and that his drinking did not affect his driving ability that night. The investigating officer could not say whether Grant's consumption of alcohol impaired Grant's ability to operate a motor vehicle. There is no evidence Grant appeared fatigued to Merritt.

## II.

Grant next assigns as error the failure on the part of the trial judge to permit his counsel to ask him leading questions during cross-examination after Grant was called as a witness for Merritt. This argument has no merit.

During the presentation of Merritt's case, Merritt called Grant as a witness. *See* S. C. Code of Laws Section 19-13-100 (1976). After Grant's counsel asked him several leading questions on cross-examination, counsel for Merritt objected. The trial judge sustained the objection and ruled that Grant's counsel could not led the witness. The trial judge did not rule that Grant's counsel could not cross-examine him.

Our Supreme Court held in *State v. Maxey,* 218 S. C. 106, 62 S. E. (2d) 100 (1950), that the general range and extent of cross-examination of a witness is within the sound discretion of the trial judge and that his exercise of discretion is not

subject to review except in the case of manifest abuse or injustice.

As in *State v. Hoffman*, 257 S. C. 461, 186 S. E. (2d) 421 (1972), the trial judge here "did not prevent appellant's counsel from cross-examining the witness ... but did nothing more than limit the manner of such examination. In so doing, he committed no error nor did he abuse his discretion." 257 S. C. at 470, 186 S. E. (2d) at 425. Grant made no offer of proof at the trial. Grant also failed to demonstrate to our satisfaction "why the denial of the right to ask leading questions prevented him from eliciting any necessary or relevant information." *Id.*

We further note Grant suffered no prejudice by the ruling of the trial judge in restricting his cross-examination. The record does not disclose anywhere an unwillingness on Grant's part either to cooperate with his own attorney or to answer his questions. The record does show, however, that even after having been told he could not ask leading questions counsel asked several.

### III.

Grant also complains about the refusal of the trial judge to permit him to introduce evidence of Merritt's conviction for selling of illegal drugs in 1974.

The trial judge would not allow the evidence concerning Merritt's narcotics conviction on the ground that the trial judge did not regard the conviction as one involving moral turpitude and on the ground that the potential prejudice to Merritt resulting from the evidence would overweigh its probative value.

The trial judge clearly erred in viewing the crime of selling narcotics as one not involving moral turpitude. Our Supreme Court held in *State v. Lilly*, 278 S. C. 499, 299 S. E. (2d) 329 (1983), that a conviction for possession of marijuana with intent to distribute is an offense of moral turpitude. The error, however, is not reversible.

Although evidence of a prior conviction of a crime involving moral turpitude may be used to impeach credibility of a witness [*State v. LaBarge*, 275 S. C. 168, 268 S. E. (2d) 278 (1980)], its admission in evidence is addressed to the sound discretion of the trial judge. *See Spears v.*

*Collins,* 253 S. C. 510, 171 S. E. (2d) 606 (1970). It is within the discretion of the trial judge to determine whether the prejudicial effect of admitting proof of a party's prior conviction "outweighs the probative worth of such evidence on the issue of credibility so as to warrant its exclusion." 81 Am. Jur. (2d) *Witnesses* Section 569 at 575 (1976). We discern no manifest abuse of discretion here, especially since Grant never suggested that narcotics somehow figured in either the collision itself or in Merritt's injuries. We also note Merritt's conviction occurred eight years prior to trial and Grant's own testimony corroborated most, if not all, of Merritt's testimony.

## IV.

Grant further complains about the trial judge's failure to charge four requested instructions and an additional request to charge. The requested instructions concern a passenger's duty to care for his own safety and "contributory negligence" on the part of a passenger who voluntarily rides with a driver whom he knows or should know is intoxicated. The additional request to charge concerns the standard of care of one voluntarily intoxicated.

Where the general instructions are sufficiently broad to enable the jury to understand fully the law of the case and the issues involved, the trial judge commits no error in refusing to give a requested instruction. *Hook v. Rothstein,* 281 S. C. 541, 316 S. E. (2d) 690 (App. 1984), *cert. denied,* 320 S. E. (2d) 35 (S. C. 1984); 75 Am. Jur. (2d) *Trial* Section 592 at 574 (1974). In order to warrant a reversal, the refusal to give a requested charge must have been erroneous [*see* 75 Am. Jur. (2d) *Trial* Section 590 at 571 (1974)] and prejudicial. *Brave v. Blakely,* 250 S. C. 353, 157 S. E. (2d) 726 (1967).

Regarding the two requests relating to a passenger's duty to care for his own safety, we hold the trial judge's general charge adequately covered this issue. After instructing the jury concerning gross contributory negligence, the trial judge expressly informed the jury that "the law requires a passenger in an automobile to . . . exercise care for his own safety as a person of ordinary reason and prudence would exercise in the same or similar circumstances" and that

a passenger could "not abandon the exercise of his own faculties and entrust his safety absolutely to the driver, if under the existing circumstances a person of ordinary prudence and care would not do so."

As to the two requests relating to a passenger's contributory negligence in riding with a driver whom he knows or should know is intoxicated and assuming it was error for the trial judge not to have charged them, we fail to see how the trial judge's refusal to charge the requests caused Grant any prejudice. In returning a verdict for punitive damages, the jury necessarily found Grant guilty of wilful, wanton, or reckless conduct; and, as we mentioned, a plaintiff's contributory negligence is no defense where a defendant's conduct is wilful, wanton or reckless. *Oliver v. Blakeney, supra; Dawson v. S. C. Power Co., supra.*

We likewise find no error in the trial judge's refusal to charge Grant's additional request to charge. *See* S. C. Code of Laws Section 15-27-100 (1976). The additional request read, "I charge you that voluntary intoxication is no excuse for negligence[.] *[B]oth parties* must exercise that degree of care and prudence which a reasonable sober man would exercise in the same or similar circumstances." [Emphasis added.] In our view, the additional request to charge constitutes a prohibited charge on the facts in that it assumes both Merritt and Grant were intoxicated, a point very much in dispute. *See* 75 Am. Jur. (2d) *Trial* Section 664 at 619; S. C. CONST. Art. V, Section 17 (1895); *Clark v. Ross*, 328 S. E. (2d) 91 (S. C. App. 1985).

## V.

Counsel for both parties in this case certified that all irrelevant matter had been deleted and the requirements of Rule 4 of the Supreme Court Rules had been satisfied. Yet, the 219-page transcript of record contains much material that seems irrelevant to any issue on appeal. For example, none of Grant's exceptions concerns damages. Nonetheless, testimony apparently relating solely to damage is included. A chiropractor's testimony alone takes up approximately 42 pages.

The Supreme Court in *State v. Harris*, 278 S. C. 46, 292 S. E. (2d) 40 (1982) expressed its concern about egregious violations

of Rule 4. It admonished appellate lawyers "to make certain any future record complies with Rule 4 before they certify the relevance of all it holds" and it reminded appellate lawyers of their duty to present "only relevant matter in the transcript of record." 278 S. C. at 47, 292 S. E. (2d) at 40; *Griffin v. Griffin, supra.*

Consistent, therefore, with *State v. Harris, supra,* which was decided on May 24, 1982, five months before counsel executed the certificate of relevancy here, we remand to the trial court for it to determine the amount of irrelevant material, if any, the transcript of record contains and for it to impose appropriate sanctions should the trial court determine, after a hearing, that irrelevant material was included in the transcript of record. The trial court shall make a report to this court concerning its findings and sanctions, if any. Upon receipt of the report, this court may either approve, disapprove, or modify the trial court's findings and any sanctions the trial court imposes.

Affirmed and remanded.