533 S.E.2d 341

**Barbara Jean WELLS, Appellant,**

v.

**Jeanne L. HALYARD, M.D., Debra B. Lister, M.D., and Healthcare Partners of South Carolina, Respondents.**

**No. 3191.**

Court of Appeals of South Carolina.

Submitted May 8, 2000.
Decided June 12, 2000.

Glenn V. Ohanesian, of Ohanesian & Ohanesian; and O. Fayrell Furr, Jr., of Furr & Henshaw, both of Myrtle Beach, for appellant.

Stephan P. Groves, John Hamilton Smith and Stephen L. Brown, all of Young, Clement, Rivers & Tisdale, of Charleston, for respondents.

MOREHEAD, Acting Judge:

In this medical malpractice action, a jury found for defendants Debra Lister, Jeanne Halyard, and Healthcare Partners of South Carolina. Barbara Wells appeals, arguing the trial court erred in charging the jury. We affirm.

On May 12, 1992, Barbara Wells was found at home unable to walk or speak. She was transported immediately to Conway Hospital Emergency Room where Dr. Debra Lister performed a full examination and evaluation. Hospital records indicate Wells stated that she had slurred speech and that "she knew what she wanted to say but could not say it." After Wells reported to a nurse that she was experiencing a severe frontal headache, Lister diagnosed Wells's symptoms as a probable "hyperglycemic episode" and Wells returned home.[1] Lister further claims she ordered a CT scan but Wells said she did not want to be admitted to the hospital and would follow up with her family physician.

The next day, still experiencing difficulty talking and ambulating, Wells went to see Dr. Jeanne Halyard, her family doctor at Healthcare Partners of South Carolina. Halyard allegedly stated that she could not find anything wrong with Wells and that Wells's problems were "in her head." In any event, Halyard ordered a refill of Wells's prescription for Ativan, an anti-anxiety drug. On May 14, Wells returned to Halyard because her symptoms remained unabated. Halyard admits her office records indicate Wells reported difficulties speaking and collecting her thoughts and occasionally missed words in her speech pattern. Halyard, however, asserts Wells left the office before Halyard examined her.

---

1. Wells's amended complaint states Lister diagnosed a "hypoglycemic episode" while Halyard's and Lister's answers refer to a probable "hyperglycemic episode."

The following day Wells's sister-in-law, Rhonda Moore, telephoned Halyard's office to report Wells's continued problems with speech, inability to control her right arm, and difficulty swallowing. Halyard asserts that, when Moore called, she was instructed to transport Wells to Halyard's office as soon as possible. Concerned about Wells's deteriorating condition, however, Moore immediately took her to Conway Hospital. The emergency room staff suspected a stroke and ordered a neurological evaluation. The tests revealed Wells had suffered an "acute cerebrovascular accident" or stroke. On May 28, the hospital discharged Wells with a permanent disability resulting from the stroke.

Wells filed this medical malpractice action against Halyard, Lister, and Conway Hospital on May 11, 1995, alleging the doctors failed to diagnose her impending stroke. On April 15, 1996, the trial court, with consent of the parties, dismissed Conway Hospital from the suit. Two years later, on February 24, 1998, Wells procured an order permitting amendment of her complaint to include Healthcare Partners of South Carolina, a charitable corporation employing Halyard at the time of the alleged incidents. Wells filed her amended complaint on March 11, 1998.

The case went to trial on November 30, 1998. On December 4, the jury returned a verdict for defendants. Wells immediately moved for a new trial asserting several particular errors in the jury charges. The court denied the motion and this appeal followed.

 A trial court must charge the current and correct law. *McCourt by and through McCourt v. Abernathy,* 318 S.C. 301, 457 S.E.2d 603 (1995). When reviewing a jury charge for alleged error, an appellate court must consider the charge as a whole in light of the evidence and issues presented at trial. *Keaton ex rel. Foster v. Greenville Hosp. Sys.,* 334 S.C. 488, 514 S.E.2d 570 (1999). If the charge is reasonably free from error, isolated portions which might be misleading do not constitute reversible error. *Id.* at 498, 514 S.E.2d at 575. An alleged error is harmless if the appellate court determines beyond a reasonable doubt that the alleged error did not contribute to the verdict. *State v. Kerr,* 330 S.C. 132, 498 S.E.2d 212 (Ct.App.1998); *see Waldrup v. Metropolitan*

*Life Ins. Co.*, 274 S.C. 344, 263 S.E.2d 652 (1980) (the appellate court must view the jury charge as a whole before assigning prejudicial error to a discrete portion of the charge).

## I.

■ Wells first argues the trial court erred in overemphasizing the various legal immunities of health care providers, leading the jury to reach a verdict for respondents. We disagree.

■ The mere repetition of a correct statement of the law does not constitute per se reversible error. *Young v. Warr*, 252 S.C. 179, 201, 165 S.E.2d 797, 808 (1969) ("a judgment will not be reversed because of repetition in a charge to the jury unless such [repetition] is prejudicial and it reasonably appears that the jury was mislead thereby"); *Keys v. Winnsboro Granite Co.*, 72 S.C. 97, 102, 51 S.E. 549, 551 (1905) (Where there is no doubt that the charge as a whole correctly states the law, the court's "failure to analyze and connect the numerous requests of the opposing counsel on the same subject, and indicate in logical sequence how they modify each other, does not afford ground for reversal."); *see, e.g., Lewis v. Emory Univ.*, 235 Ga.App. 811, 509 S.E.2d 635 (1998) (the appellate court found charge, repeated on five separate occasions, that jury could not guess or speculate to reach a conclusion in the medical malpractice case, was not reversible error in the context of the entire charge). *But see, e.g., Hunnicutt v. Griffin*, 76 N.C.App. 259, 332 S.E.2d 525 (1985) (the appellate court found charge was erroneously repeated where the trial court instructed the jury six times that negligence cannot be presumed from the mere fact of injury).

In this case, the trial court's repetitions were generally correct statements of the current state law. *See McCourt*, 318 S.C. at 308, 457 S.E.2d at 607 (the appellate court found no error where "the instructions as a whole clearly intimate that a mere mistake in diagnosis or error in judgment alone is insufficient to support a finding of malpractice"); *Delk v. Liggett & Myers Tobacco Co.*, 180 S.C. 436, 443, 186 S.E. 383, 386 (1936) ("A plaintiff must prove negligence affirmatively."); *Wall v. Suits*, 318 S.C. 377, 382–83, 458 S.E.2d 43, 46 (Ct.App. 1995) (where the trial court instructed the jury that "[w]hen a physician undertakes to treat a patient, the law does not

require absolute accuracy either in his practice or his judgment nor does the law hold a physician to the standard of infallibility," the appellate court found no error and concluded "the charge in its entirety indicates a mistaken diagnosis alone is insufficient to support a finding of malpractice"). While the trial court may have repeated certain charges, the trial court never misstated the law. Furthermore, any repetition was harmless because the jury charge as a whole was not misleading. We, therefore, conclude Wells was not prejudiced such that the jury's verdict should be reversed.

## II.

■ Wells also argues the trial court erred in charging the jury, "There is absolutely no restriction on lawsuits. Anybody can sue anyone, at any time, for anything," thereby implying Wells's suit was frivolous. We find no merit to this argument.

While we agree that this discussion potentially could mislead the jury if taken out of context, the trial court was merely introducing the concept of burden of proof and the elements of negligence Wells was required to prove. Moreover, immediately prior to this discussion, the trial court stated:

So, Madame Forelady, if I should intimate in any way where I believe the truth to lie as between the Plaintiff and the Defendant, then you disregard it, for it's unintentional on my part. That's your providence [sic] and yours alone, and I wouldn't intentionally invade your providence [sic].

The trial court, therefore, avoided any potential prejudice. Considering the charge as a whole, we find no reversible error.

## III.

■ Wells argues the trial court erred in failing to charge the standard of care applicable to her. Our review of the record, however, reveals no evidence that Wells ever asked the trial court to give this particular charge. Although Wells objected to the failure to give such a charge after the trial court concluded its charge to the jury, she points to nothing showing she ever asked for it prior to the jury charge.

Furthermore, the record does not contain any proposed jury charges regarding a plaintiff's standard of care. In her reply brief, Wells claims her "Request to Charge Number 32,"

which the trial court refused to give and to which she objected, encompasses this issue. This charge is a comparative negligence charge taken from *Davenport v. Cotton Hope Plantation Horizontal Property Regime,* 325 S.C. 507, 482 S.E.2d 569 (Ct.App.1997), *aff'd as modified,* 333 S.C. 71, 508 S.E.2d 565 (1998). The charge deals with assumption of the risk rather than a plaintiff's standard of care.

Since Wells failed to request this particular charge prior to the charges being given and since she failed to include the proposed charge in the record, this issue is not preserved. *See Greenville Mem'l Auditorium v. Martin,* 301 S.C. 242, 391 S.E.2d 546 (1990) (the appellate court will not review the failure to give a requested jury charge where the request to charge does not appear on the record); *Kline Iron & Steel Co. v. Superior Trucking Co.,* 261 S.C. 542, 201 S.E.2d 388 (1973) (the appellate court cannot review trial court's refusal to give requested charge where appellant fails to include requested charge in the record); *Wren v. Kirkland Distrib. Co.,* 250 S.C. 178, 156 S.E.2d 865 (1967) (the appellate court will not review trial court's failure to give requested charge where the contents of the charge do not appear in the record).

## IV.

■ Wells finally argues the trial court erred in charging the jury because the jury charges, as a whole, "were so slanted that any reasonable person would be swayed towards the defense." Wells specifically asserts that the cumulative effect of the errors in the jury charges justifies a new trial in this case. We disagree.

We initially address whether this issue is preserved. Wells made a motion for a new trial asserting several errors regarding the jury charges: (1) the trial court failed to charge particular instructions requested; (2) the trial court failed to charge Wells's standard of care; (3) the trial court overemphasized the standard that the occurrence of an injury is not enough to find medical malpractice; (4) the trial court repeated the "infallible standard" charge; and (5) the trial court erred in charging "anyone can file a lawsuit." Wells objected to each of these errors separately during the charge and recharge, and she objected to the errors as a whole during the motion for a new trial. We, therefore, conclude this issue is preserved for our review.

Wells cites *State v. Freeman,* 319 S.C. 110, 459 S.E.2d 867 (Ct.App.1995), for the proposition that while each error raised alone may be insufficient to warrant a new trial, the cumulative effect of those errors is enough to require a new trial. We can find no civil cases, however, where the appellate courts of our state have reversed a jury verdict and ordered a new trial based on the cumulative effect of errors. Although our state supreme court briefly addressed a similar argument in *Cock–N–Bull Steak House, Inc. v. Generali Insurance Co.,* 321 S.C. 1, 466 S.E.2d 727 (1996), the court concluded no new trial was warranted because the trial court did not commit any of the underlying alleged errors.

In this case, we have found no reversible error with respect to each of the errors asserted on appeal. Considering the charge as a whole, we conclude the trial court fairly instructed the jury regarding the law in medical malpractice cases. *See Roberts v. Hunter,* 310 S.C. 364, 426 S.E.2d 797 (1993) (where appellant contends the trial court's jury charge erroneously overemphasized the limitations on the defendant's liabilities and was unduly exculpatory and favorable to the defendants, the appellate court determined the charge as a whole correctly stated the applicable law of medical malpractice and concluded there was no error).

**AFFIRMED.**

CURETON and GOOLSBY, JJ., concur.