727 S.E.2d 407

Marilee B. FAIRCHILD and Larry J. Fairchild, Plaintiffs,

Of whom Marilee B. Fairchild is Respondent,

v.

SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION,
William Leslie Palmer and Palmer Construction Co., Inc.,
Defendants,

Of whom William Leslie Palmer and Palmer
Construction Co., Inc., are Petitioners.

No. 27112.

Supreme Court of South Carolina.

Heard Nov. 15, 2011.

Decided April 11, 2012.

Rehearing Denied May 25, 2012.

94

Kirby D. Shealy, III and Bradley L. Lanford, both of Baker, Ravenel & Bender, of Columbia, for Petitioners.

Bert G. Utsey, III, of Peters, Murdaugh, Parker, Eltzroth & Detrick, of Walterboro; and George D. Jebaily and Suzanne H. Jebaily, both of Jebaily Law Firm, of Florence, for Respondent.

Justice BEATTY.

This Court granted a petition for a writ of certiorari to review the decision in *Fairchild v. South Carolina Department of Transportation*, 385 S.C. 344, 683 S.E.2d 818 (Ct.App. 2009). The Court of Appeals affirmed in part, reversed in part, and remanded for a new trial a negligence action arising from a motor vehicle accident. In relevant part, the Court of Appeals determined (1) Marilee Fairchild's claim for punitive damages should have been submitted to the jury, (2) the trial court should have charged the jury on the intervening negligence of a treating physician, and (3) the trial court did not abuse its discretion in denying William Leslie Palmer's motion under Rule 35, SCRCP for an independent medical examination (IME) to be performed by Dr. James Ballenger. We affirm.

## I. FACTS

This action arises out of a motor vehicle accident that occurred on March 1, 2001 while several vehicles were traveling south on Interstate 95 in South Carolina.

Just before the accident, James Rabb, an employee with the South Carolina Department of Transportation (SCDOT), was driving a dump truck with an attached trailer transporting a backhoe. Rabb was traveling in the left lane of the southbound traffic (closest to the median) when he pulled in to a paved "cross-over" in the median so he could turn around and enter the northbound lanes of I–95. While Rabb was stopped waiting for the northbound traffic to clear, the back of his trailer allegedly protruded into the left traffic lane on the southbound side.

Several cars traveling south in the left lane directly behind Rabb saw Rabb's trailer and simultaneously switched to the

right lane. When those cars moved over, Marilee Fairchild, who was behind them driving a minivan, saw Rabb's trailer partially blocking the left lane where she was traveling. Fairchild "flashed" her brakes and then continued to brake while staying ahead of the vehicle behind her. Fairchild managed to avoid Rabb's trailer, but she was struck by a truck traveling behind her that was driven by William Leslie Palmer.

Palmer, whose truck also had an attached trailer (which contained a motorcycle), hit his brakes and swerved to the right when he came upon Fairchild. However, Palmer struck Fairchild's minivan, and the force of the impact with Palmer's large vehicle caused Fairchild's minivan to flip over and roll before landing in the median. Rabb's truck was not hit in the accident.

On February 26, 2003, Fairchild[1] brought this negligence action against SCDOT, Palmer, and Palmer Construction Co., alleging she sustained physical injuries and property damage in the accident. She sought both actual and punitive damages. Fairchild thereafter entered into a covenant not to sue with SCDOT, and SCDOT was dismissed as a party.

At trial, the jury returned a verdict in favor of Fairchild for $720,000. Both parties appealed. The Court of Appeals affirmed in part, reversed in part, and remanded. We thereafter granted Palmer's[2] petition for a writ of certiorari.

## II. LAW/ANALYSIS

### A. Punitive Damages

Palmer first argues the Court of Appeals erred in holding the trial court should have submitted Fairchild's claim of punitive damages to the jury based on its determination that the evidence and its reasonable inferences created a factual question as to whether he had acted recklessly.

The trial court granted Palmer's motion for a directed verdict on Fairchild's claim for punitive damages on the basis

---

1. Fairchild's husband was also a plaintiff, but he is not a party to this appeal.

2. "Palmer" shall also include his construction company, where applicable.

there was *no* evidence of reckless conduct by Palmer. However-er, the trial court did conclude that two statutes governing traffic safety were implicated in this case and charged the jury on the same. The first, section 56–5–1520(A), provides general rules as to maximum and safe speeds and states when lower speeds may be required:

A person shall not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Speed must be so controlled to avoid colliding with a person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of a person to use care.

S.C.Code Ann. § 56–5–1520(A) (2006).

In addition, the trial court charged the jury on section 56–5–1930(a), which prohibits following too closely:

The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

*Id.* § 56–5–1930(a).

The Court of Appeals found the grant of a directed verdict on the claim for punitive damages was error as the evidence and its reasonable inferences created a factual question as to whether Palmer had acted recklessly. *Fairchild,* 385 S.C. at 353, 683 S.E.2d at 823. The court agreed with Fairchild that, based on Palmer's conduct, which included driving a large commercial truck [3] into heavy traffic just before the accident without any reduction in his rate of speed, and his alleged statutory violations, the jury should have been permitted to consider whether Palmer acted recklessly. *Id.*

Citing long-standing South Carolina precedent, the Court of Appeals held the violation of a statute constitutes negligence per se, and negligence per se is some evidence of recklessness and willfulness that requires submission of the issue of punitive damages to the jury. *Id.* at 354, 683 S.E.2d at 823. The Court of Appeals cited this Court's decision in *Wise v. Broad-*

---

**3.** Palmer's truck weighed 13,740 pounds, the trailer weighed 2,760 pounds, and the motorcycle he was transporting was 655.6 pounds.

*way*, 315 S.C. 273, 433 S.E.2d 857 (1993) as well as additional authorities to this effect:

> *Wise v. Broadway*, 315 S.C. 273, 276, 433 S.E.2d 857, 859 (1993) ("The causative violation of a statute constitutes negligence per se and is evidence of recklessness and willfulness, requiring the submission of the issue of punitive damages to the jury."); *Rhodes v. Lawrence*, 279 S.C. 96, 97–98, 302 S.E.2d 343, 344 (1983) ("In these circumstances, a jury question as to punitive damages was clearly presented given the well settled rule that a showing of statutory violation can be evidence of recklessness and willfulness."); *Austin v. Specialty Transp. Servs., Inc.*, 358 S.C. 298, 314, 594 S.E.2d 867, 875 (Ct.App.2004) ("A factual question as to punitive damages is presented when there is evidence of a statutory violation.").

*Id.* The Court of Appeals noted "[t]hese cases limit their holdings to creating a jury question only and not recklessness per se." *Id.* The court referenced the express limitation pronounced by this Court in *Wise:*

> Violation of a statute does not constitute recklessness, willfulness, and wantonness *per se*, but is some evidence that the defendant acted recklessly, willfully, and wantonly. It is always for the jury to determine whether a party has been reckless, willful, and wanton. However, it is not obligatory as a matter of law for the jury to make such a finding in every case of a statutory violation.

*Id.* at 354, 683 S.E.2d at 823–24 (quoting *Wise*, 315 S.C. at 276–77, 433 S.E.2d at 859 (internal citations omitted)).

The Court of Appeals concluded that there was evidence Palmer was negligent per se in causing the accident, which consisted of following another vehicle too closely and speeding; consequently, a jury could have found Palmer violated sections 56–5–1930(a) and 56–5–1520(A), and the finding of a statutory violation may be considered by the jury as evidence of recklessness. *Id.* at 357, 683 S.E.2d at 825. As a result, the court reversed the grant of a directed verdict on punitive damages and remanded for a new trial. *Id.*

On appeal to this Court, Palmer asserts this was error, and that "evidence of a statutory violation alone, without more, is generally insufficient to send the issue of punitive damages

to the jury." He contends the two statutes at issue codify the common law standards for safe speeds and following distances, and they do not establish bright-line standards; therefore, they should not form the basis for an award of punitive damages without other supporting evidence.

In reviewing a ruling on a motion for a directed verdict, this Court must view the evidence and all reasonable inferences from the evidence in the light most favorable to the party opposing the motion. *Weir v. Citicorp Nat'l Servs., Inc.*, 312 S.C. 511, 435 S.E.2d 864 (1993). A case should be submitted to the jury when the evidence is susceptible of more than one reasonable inference. *Unlimited Servs., Inc. v. Macklen Enters., Inc.*, 303 S.C. 384, 401 S.E.2d 153 (1991). It is not the duty of the trial court to weigh the testimony in ruling on a motion for a directed verdict. *Young v. Bost*, 241 S.C. 289, 128 S.E.2d 118 (1962).

Punitive damages are recoverable where there is evidence the defendant's conduct was reckless, willful, or wanton. *Cartee v. Lesley*, 290 S.C. 333, 350 S.E.2d 388 (1986). Recklessness is the doing of a negligent act knowingly; it is a conscious failure to exercise due care, and the element distinguishing actionable negligence from a willful tort is inadvertence. *Berberich v. Jack*, 392 S.C. 278, 287, 709 S.E.2d 607, 612 (2011). The terms "willful" and "wanton" when pled in a negligence action are synonymous with "reckless" and import a greater degree of culpability than mere negligence. *Id.* at 288, 709 S.E.2d at 612. "Evidence that the defendant's conduct breached this higher standard entitles the plaintiff to a charge on punitive damages." *Id.* (quoting *Marcum v. Bowden*, 372 S.C. 452, 458 n. 5, 643 S.E.2d 85, 88 n. 5 (2007)); *see also* S.C.Code Ann. § 15–33–135 (2005) ("In any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence.").

"Ordinarily, the test is whether the tort has been committed in such a manner or under circumstances that a person of ordinary reason or prudence would have been conscious of it as an invasion of the plaintiff's rights." *Cartee*, 290 S.C. at 337, 350 S.E.2d at 390. "The test may also be satisfied by evidence of the causative violation of an applicable statute." *Id.* "However, before punitive damages may be

submitted to the jury, there must be evidence the statutory violation proximately contributed to the injury." *Id.* "Ordinarily, whether or not the statutory violation contributed as a proximate cause to the injury is a question for the jury." *Id.*

"There must be some inference of a causal link between the statutory violation and the injury to warrant submitting the issue of punitive damages to the jury." *Id.* at 337–38, 350 S.E.2d at 390. For example, in *Cartee* the Court noted that if, in a case by beneficiaries against trustees for mismanaging assets, the trustees had been guilty of driving without their driver's licenses, they would have been guilty of violating a statute; however, that violation could have nothing to do with the injuries claimed by beneficiaries and would not justify a charge on punitive damages because "[s]ome inference of causation must be shown." *Id.* at 338 n. 3, 350 S.E.2d at 390 n. 3; *see also Austin v. Specialty Trans. Servs., Inc.,* 358 S.C. 298, 594 S.E.2d 867 (Ct.App.2004) (stating the causative violation of a statute constitutes negligence per se and is evidence of recklessness and willfulness, requiring submission of the issue of punitive damages to the jury).

In *Copeland v. Nabors,* 285 S.C. 340, 329 S.E.2d 457 (Ct. App.1985), the Court of Appeals found the record contained evidence from which the jury could have inferred that Nabors violated one or more statutes relating to maximum speed limits and to overtaking and passing vehicles proceeding in the same direction and that Nabors thereby engaged in conduct warranting an award of punitive damages. Likewise, in *Field v. Gregory,* 230 S.C. 39, 94 S.E.2d 15 (1956), this Court found evidence of the violation of at least three applicable traffic statutes, which resulted in a traffic collision, warranted the submission of punitive damages to the jury. We stated, "The violation of an applicable statute is negligence per se, and whether or not such breach contributed as a proximate cause to [the] plaintiff's injury is ordinarily a question for the jury." *Id.* at 44, 94 S.E.2d at 18 (citation omitted). We observed that "[c]ausative violation of an applicable statute constitutes actionable negligence and is evidence of recklessness, willfulness and wantonness." *Id.* at 46, 94 S.E.2d at 19 (citing *Morrow v. Evans,* 223 S.C. 288, 295, 75 S.E.2d 598, 601 (1953)); *accord Padgett v. Colonial Wholesale Dist. Co.,* 232 S.C. 593, 103 S.E.2d 265 (1958); *Vernon v. Atlantic Coast Line R. Co.,* 221

S.C. 376, 70 S.E.2d 862 (1952); *Ralls v. Saleeby*, 178 S.C. 431, 182 S.E. 750 (1935); *Lumpkin v. Mankin*, 136 S.C. 506, 134 S.E. 503 (1926).

In *Daniels v. Bernard*, 270 S.C. 51, 240 S.E.2d 518 (1978), this Court held that testimony that a witness saw two vehicles traveling north on Highway 52, that Bernard's vehicle was trailing the vehicle driven by Daniels and gaining on Daniels's vehicle, and that the Bernard automobile rammed into the rear of Daniels's vehicle was evidence from which the jury could have reasonably inferred that Bernard was following too closely and was failing to maintain a proper lookout. *Id.* at 55, 240 S.E.2d at 519–20. The Court noted following too closely was a violation of section 56–5–1930 and "the violation of a statute is negligence per se and is evidence of recklessness and willfulness, requiring the submission of the issue of punitive damages to the jury." *Id.* at 55, 240 S.E.2d at 520 (citing *Jarvis v. Green*, 257 S.C. 558, 186 S.E.2d 765 (1972) and *Still v. Blake*, 255 S.C. 95, 177 S.E.2d 469 (1970)). The *Daniels* Court concluded the trial court erred in holding there was no evidence of recklessness to sustain an award for punitive damages. *Id.* at 56, 240 S.E.2d at 520.

Similarly, in the current appeal, we find the trial court erred in granting a directed verdict on the issue of punitive damages. It is not the duty of a trial court to weigh the evidence. Viewing the evidence and its reasonable inferences in the light most favorable to Fairchild, as both the trial court and this Court are required to do, we hold there is evidence to create a jury question as to whether or not Palmer acted with recklessness, thus requiring submission of the issue of punitive damages to the jury.

Palmer was driving a commercial-sized truck, towing a 28–foot trailer, and hauling a motorcycle, and his combined weight exceeded eight and one-half tons. Palmer knew he was approaching an area of merging traffic and possible congestion on I–95 near several rest areas, and he acknowledged that it was an area "where a lot of accidents happen." Palmer further described the traffic around his truck prior to the collision as "typical crazy interstate 95 traffic, you know, everybody running together." He also was aware of the potential that traffic could slow down to a crawl due to a

wreck or other conditions, and he knew of the need to maintain a safe stopping distance for such a large vehicle.

Palmer acknowledged that he maintained a "pretty steady speed" of 65 to 70 miles per hour to avoid "giving distance" that would let other vehicles cross into his lane ahead of him. He also stated he was "maybe a hundred feet or more" behind Fairchild when she first applied her brakes. Palmer maintained he did not even notice Fairchild until right before the impact.

We further agree with the Court of Appeals that there is evidence that Palmer might have violated section 56–5–1520(A) (circumstances requiring a reduction in speed) and section 56–5–1930(a) (following too closely), and there is an inference that the violations of these statutes were the proximate cause of the accident. Therefore, Fairchild's claim for punitive damages should have been submitted to the jury.

Moreover, even where the trial court has submitted the issue of punitive damages to a jury, the defendant still has an opportunity to challenge the propriety of any resulting punitive damages award. The trial court has the authority to review the punitive damages award and if the court finds the award is inappropriate or excessive, it has the discretion to order a new trial or remittitur. *See generally Mitchell v. Fortis Ins. Co.*, 385 S.C. 570, 686 S.E.2d 176 (2009) (stating a reviewing court should consider the following set of factors in conducting a post-judgment review of an award of punitive damages: (1) the degree of reprehensibility of the defendant's conduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the amount of the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases).

## B. Intervening Negligence of Third Party

Palmer next contends the Court of Appeals erred in determining the trial court should have charged the jury on the intervening negligence of a third party.

Fairchild submitted three proposed instructions (Plaintiff's Requests to Charge # 11, # 12, & # 13) regarding intervening

negligence, which included several variations on the following principles:

> The intervening negligence of a third party will not excuse the original wrongdoer if such intervention ought to have been foreseen in the exercise of due care.

> It is the law in South Carolina that the negligence of a treating doctor is reasonably foreseeable. It is the general rule that if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the negligent act of the doctor as part of the immediate and direct damages which naturally flow from the original injury.

The trial court declined to give the requested instructions on the basis there was no evidence of negligent treatment by an attending physician.

The Court of Appeals held this was error, noting that during the trial Palmer had stressed the side effects of the drugs prescribed for Fairchild during treatment for her injuries and had suggested that she was overmedicated. *Fairchild*, 385 S.C. at 352, 683 S.E.2d at 822. Palmer had implied that the overmedication, rather than his own negligence, was the source of many of Fairchild's ailments. *Id.* The Court of Appeals additionally noted that, to support this theory, "Palmer called and questioned several doctors and nurses to discuss Fairchild's course of treatment." *Id.* The Court of Appeals found that "[t]he following statement by [Palmer's] counsel made during closing arguments, in particular, was convincing that the charges were relevant: 'So ask yourself, is it the chronic post-traumatic headache that is the disabling headache, or is it the medication over-use that is the disabling headache?'" *Id.* at 352, 683 S.E.2d at 822–23. The court concluded it was error to refuse to give the requested instruction and further found that, "given the jury's verdict and the amount of damages at issue," the ruling could have impacted the jury's verdict, resulting in prejudice. *Id.* at 352, 683 S.E.2d at 823.

Palmer acknowledges that the proposed charges correctly state the current law in South Carolina,[4] but maintains there

---

4. *See, e.g., Graham v. Whitaker*, 282 S.C. 393, 321 S.E.2d 40 (1984); *Young v. Tide Craft, Inc.*, 270 S.C. 453, 242 S.E.2d 671 (1978).

were no references made at trial to a negligent act or omission by a treating physician. Palmer also states that he did not seek a charge on whether the intervening negligence of a third party severed the causal connection between Palmer's negligence and Fairchild's injury, and this is an affirmative defense, citing *Small v. Pioneer Machinery, Inc.*, 316 S.C. 479, 450 S.E.2d 609 (Ct.App.1994) (holding the defense of a third-party's intervening acts of negligence does not break the causal chain if the acts are foreseeable).

"Ordinarily, a trial judge has a duty to give a requested instruction that correctly states the law applicable to the issues and evidence." *Ross v. Paddy*, 340 S.C. 428, 437, 532 S.E.2d 612, 617 (Ct.App.2000). "Where a request to charge is timely made and involves a controlling legal principle, a refusal by the trial judge to charge the request constitutes reversible error." *Id.* "Moreover, when general instructions to the jury are insufficient to enable the jury to understand fully the law of the case and issues involved, a refusal to give a requested charge is reversible error." *Id.*

It is the court's duty to instruct the jury on the law, and "[t]he jury ought not to be left to cut a way through the woods with no compass to guide it." *Collins–Plass Thayer Co. v. Hewlett*, 109 S.C. 245, 253–54, 95 S.E. 510, 513 (1918), *cited in Eaddy v. Jackson Beauty Supply Co.*, 244 S.C. 256, 259, 136 S.E.2d 297, 298 (1964).

To warrant reversal, the refusal to give a requested jury charge must be both erroneous and prejudicial.[5] *Cole v. Raut*, 378 S.C. 398, 663 S.E.2d 30 (2008); *Pittman v. Stevens*, 364 S.C. 337, 613 S.E.2d 378 (2005); *Jones v. Ridgely Commc'ns, Inc.*, 304 S.C. 452, 405 S.E.2d 402 (1991); *Daves v. Cleary*, 355 S.C. 216, 584 S.E.2d 423 (Ct.App.2003); *Merritt v. Grant*, 285 S.C. 150, 328 S.E.2d 346 (Ct.App.1985).

---

**5.** The Court of Appeals correctly cited this standard in its opinion. However, Palmer takes issue with one case the court cited, *Wells v. Halyard*, 341 S.C. 234, 237, 533 S.E.2d 341, 343 (Ct.App.2000), which states: "An alleged error is harmless if the appellate court determines beyond a reasonable doubt that the alleged error did not contribute to the verdict." Palmer contends the "beyond a reasonable doubt" reference is a criminal standard that is not applicable in this civil case. We agree, but find the citation to *Wells* did not affect the propriety of the conclusion reached by the Court of Appeals in *Fairchild*.

We find the charge requested by Fairchild was necessary to allow the jury to properly evaluate proximate cause and resulting damages, and its omission resulted in prejudice to Fairchild. There was an abundance of testimony elicited by Palmer on the allegation that overmedication by Fairchild's physicians was a possible cause of many of Fairchild's ailments. Palmer's message throughout the trial was that he should not be held responsible for any resulting symptoms in Fairchild that might have been caused by or exacerbated by overmedication or the treatment of Fairchild's physicians.

For example, Palmer called Dr. James Ballenger, a psychiatrist, as an expert witness for the defense. Dr. Ballenger testified "that the most likely reason [Fairchild's] headaches got so much worse from '02 to at least '05 or maybe into '06, was that ... *a decision was made* to go into big-time medications. Oxycontin was the first one." (Emphasis added.) He opined that Fairchild's difficulties were likely linked to "rebound headache syndrome ... meaning you have the headache; you take very strong medicines; it goes away, it comes out of your system, and you get a headache ultimately caused by taking the medicine." Although Palmer also states there was testimony that the overmedication could also be based on Fairchild's own conduct, the implication here clearly was that a treating physician made the decision "to go into big-time medications" and that this was not the best course of treatment. Palmer also called Dr. Robert Richey, an internist who had treated Fairchild. Dr. Richey asserted Fairchild "was on a cornucopia of medicine," and he expressed reservations about several drugs, including Sulfasalazine and Indocin, prescribed by Fairchild's other physicians and he detailed the potential side effects from these drugs.

Further, in cross-examining Fairchild's witnesses, Palmer repeatedly questioned the type of medical treatment she had received and whether she had suffered adverse effects, such as increased pain and medical "intoxication," from the prescribed treatment. The clear purpose of Palmer's repeated line of questioning in this regard was to reduce the assessment of damages by distinguishing any harm he believed was caused by Fairchild's medical treatment and alleged overmedication from any harm he allegedly caused in the motor vehicle collision.

Under these particular circumstances, where Fairchild's treatment and medical condition were the focus of so much of the testimony, the charge should have been given to avoid confusion for the jury and to aid it in properly evaluating proximate cause and damages. We agree with the Court of Appeals that the failure to give the requested charge was error warranting reversal. *See, e.g., Eaddy,* 244 S.C. at 259, 136 S.E.2d at 298 (concluding where the request to charge was of a controlling principle of law and was timely made, the refusal of the charge was error requiring reversal and a new trial).

## C. Palmer's Motion for an IME by Dr. James Ballenger

 Palmer next contends the Court of Appeals erred in holding the trial court did not abuse its discretion in denying his motion for an IME to be performed by Dr. James C. Ballenger.

Palmer filed a pretrial motion, pursuant to Rule 35 of the South Carolina Rules of Civil Procedure, for an IME to be performed on Fairchild by Dr. Ballenger. Dr. Ballenger is a psychiatrist who had been retained by Palmer as an expert witness regarding Fairchild's alleged injuries.

Fairchild did not oppose an IME, but objected to Dr. Ballenger being designated the examining physician because he had a pre-existing relationship with Palmer. Specifically, Fairchild asserted the following: (1) some four months earlier, Palmer had named Dr. Ballenger as an expert witness for the defense and had paid him a retainer; (2) Dr. Ballenger had already examined some of Fairchild's medical records that were sent to him by Palmer; (3) Dr. Ballenger had already formed opinions about her condition prior to an IME; (4) Dr. Ballenger was expected to testify as a defense witness at trial; and (5) Dr. Ballenger had been referred to Palmer by another expert who had also been retained by Palmer to question the extent of Fairchild's injuries.

The trial court denied Palmer's motion to have Dr. Ballenger perform an IME. The trial court found Dr. Ballenger's prior work on Fairchild's case as a retained expert for the defense and the fact that Palmer had sent Dr. Ballenger not only Fairchild's medical records, but also the transcripts of

depositions of some of Fairchild's treating physicians in advance of his request for an IME, formed the basis for a reasonable objection to the appointment of Dr. Ballenger. The trial court further stated that, upon being instructed to submit a list of alternative physicians for the court to consider for the IME, Palmer had informed the court that he was unwilling to pay for an examination to be made by any physician other than Dr. Ballenger. The trial court concluded that, "given this election by [Palmer], [it was] left with no alternative other than to deny the motion."

The Court of Appeals determined the trial court did not abuse its discretion in denying Palmer's motion to have Dr. Ballenger perform an IME on Fairchild. *Fairchild*, 385 S.C. at 360, 683 S.E.2d at 827. Palmer argues this was error, as Fairchild did not assert a "reasonable objection" under Rule 35(a), SCRCP to the appointment of Dr. Ballenger. Palmer contends a physician's prior relationship with the defendant and his or her familiarity with the case should not preclude the physician from being selected by the defendant to perform the examination.[6] Both parties have observed that there are no South Carolina decisions specifically addressing the provision for a "reasonable objection" under Rule 35(a), SCRCP.

■■■ "In interpreting the meaning of the South Carolina Rules of Civil Procedure, the Court applies the same rules of construction used to interpret statutes." *Maxwell v. Genez*, 356 S.C. 617, 620, 591 S.E.2d 26, 27 (2003). "If a rule's language is plain, unambiguous, and conveys a clear meaning, interpretation is unnecessary and the stated meaning should

---

6. Palmer cites, e.g., *Timpte v. District Court*, 161 Colo. 309, 421 P.2d 728, 729 (1966) ("So long as a plaintiff may select his own doctor to testify as to his physical condition, fundamental fairness dictates that a defendant shall have the same right, in the absence of an agreement by the parties as to who the examining physician will be."). The *Timpte* case applying Colorado state court rules, as well as other authority cited by Palmer applying Rule 35 of the Federal Rules of Civil Procedure, are inapposite because those rules do not contain the same provision present in Rule 35(a), SCRCP. Further, we do not agree that a plaintiff chooses his or her own physician. *See* John E. Parker & Jack L. Nettles, *Automobile and Truck Accidents, in* 1 *The South Carolina Practice Manual* 199 (William Howard, Sr. & E. Warren Moise eds., 2000) (noting the plaintiff usually did not choose his or her physician; instead, treatment was provided by the physician on call at the hospital or the person was referred to the physician by another physician).

be enforced." *Id.; see also Stark Truss Co. v. Superior Constr. Corp.,* 360 S.C. 503, 508, 602 S.E.2d 99, 102 (Ct.App. 2004) (stating where the language of a court rule is clear and unambiguous, the court is obligated to follow its plain and ordinary meaning without resort to forced construction to limit or expand the rule); *cf. Muci v. State Farm Mut. Auto. Ins. Co.,* 478 Mich. 178, 732 N.W.2d 88, 93 (2007) ("The interpretation of court rules and statutes presents an issue of law that is reviewed de novo.").

A trial court's rulings in matters related to discovery generally will not be disturbed on appeal in the absence of a clear abuse of discretion. *Dunn v. Dunn,* 298 S.C. 499, 381 S.E.2d 734 (1989); *Creighton v. Coligny Plaza Ltd. P'ship,* 334 S.C. 96, 512 S.E.2d 510 (Ct.App.1998). An abuse of discretion occurs when the trial court's order is controlled by an error of law or when there is no evidentiary support for the trial court's factual conclusions. *Sundown Operating Co. v. Intedge Indus., Inc.,* 383 S.C. 601, 681 S.E.2d 885 (2009).

Rule 35 of the South Carolina Rules of Civil Procedure governs requests for physical and mental examinations and provides in relevant part as follows:

> In any case in which the amount in controversy exceeds $100,000 actual damages, and the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown....
>
> The physician of the party to be examined may be present at the examination. Unless the parties agree, or the court for good cause shown determines otherwise, the examination shall be in the county where the person to be examined, or his physician, resides.... Upon *reasonable objection* to the physician designated to make the examination, and if the parties shall fail to agree as to who shall make the examination, the court may designate a physician; but the fact that a physician was so designated shall not be admissible upon the trial.

Rule 35(a), SCRCP (emphasis added). The official Notes to Rule 35(a), SCRCP observe that the first paragraph of Rule 35(a) is based on the Federal Rule on this subject, but the second paragraph is not included in the Federal Rule. The second paragraph was specifically added by this Court to establish limits on the use of this procedure.[7]

Under the plain language of Rule 35(a), the defendant clearly does not have the right to unilaterally select the examining physician; rather, the court alone has the right to make the appointment. The rule contemplates that the parties will confer on this point to make suggestions, but where a "reasonable objection" has been interposed and the parties cannot agree, the court will make the selection. *See* Rule 35(a), SCRCP (providing upon reasonable objection and "if the parties shall fail to agree as to who shall make the examination, the court may designate a physician"); *see also* Rule 11(a), SCRCP (stating motions should generally contain an affirmation that the movant's counsel communicated with opposing counsel prior to filing the motion to make a good faith effort to resolve the matter).

A "reasonable objection" in this context simply means the reason for the objection must not be frivolous. What is reasonable will depend on the individual facts and circumstances of the case, which is precisely why the determination of this matter, as in other discovery and evidentiary disputes, is best left to the sound discretion of the trial court. *See generally LeBlanc v. Cambo*, 26 Conn.Supp. 338, 223 A.2d 311 (C.P.1966) (observing what is a reasonable objection to a particular physician named to perform a physical examination is a matter that must of necessity be left to the trial court's inherent discretion).

The purpose of the rule for an IME is to materially aid the jury, not just the defendant, in evaluating the actual damages sustained and arriving at a just verdict. This purpose was recognized long before South Carolina law permitted such examinations. *See Best v. Columbia Elec. St. Ry., Light*

---

7. A somewhat similar procedure exists under workers' compensation law, which allows the appointment of "a disinterested and duly qualified physician or surgeon" to examine the injured claimant. S.C.Code Ann. § 42–17–30 (Supp.2011).

*& Power Co.*, 85 S.C. 422, 428, 67 S.E. 1, 3 (1910) (Woods, J., dissenting) (stating nothing can be more helpful to the jury in reaching a just estimate of the damages in a personal injury suit than knowledge of the true nature of the injury, and whenever it appears to the circuit court that an examination by impartial experts would materially aid the jury, the circuit court should order such examination to be made by disinterested experts). Thus, the better rule is that the physician should not be affiliated with either party in order to serve the purposes of Rule 35.

In *Richardson v. Johnson*, 60 Tenn.App. 129, 444 S.W.2d 708, 710 (1969), the Tennessee court, echoing these sentiments, listed a series of guidelines regarding court-ordered physical examinations, including, "The physician must be selected by the court, not the defendant, and must be competent and disinterested." The court stated "it is clear that the power so vested in the court is a discretionary power, and not an absolute right in the applicant, and that the physician or physicians so appointed act as officers of the court, and not as agents of either party." *Id.* at 712. The court further observed that where claims concern injuries or disabilities that are based upon the subjective complaints of the plaintiff, "an impartial physician may have objective means of testing the subjective claims of the plaintiff[.]" *Id.* As is further explained in a case from a Missouri court:

> The law invests the trial court with authority to appoint physicians to make [a] physical examination of the plaintiff in a physical injury suit. The defendant cannot demand it as a matter of right, but the court in its discretion may do it in the furtherance of justice. When the court makes such an appointment, [it] does so because [it] determines in [its] discretion that the case calls for the opinion of *disinterested and unbiased physicians, not friends of either parties,* whose testimony is likely to be biased.

*Atkinson v. United Rys. Co.*, 286 Mo. 634, 228 S.W. 483, 485 (1921) (emphasis added) (internal citations omitted). The Missouri court also recognized that a "court could not compel [a] plaintiff to submit to [a physical] examination by the witnesses for the other side," and "[t]he physicians appointed in such cases are the officers of the court." *Id.*

In the current appeal, the finding of the trial court that Fairchild had interposed a reasonable objection to Dr. Bal-

lard's designation as the examining physician was a proper exercise of the trial court's inherent discretion to rule on discovery matters and is amply supported by the record. Dr. Ballenger was retained as a defense witness and had reviewed not only Fairchild's medical records, but also the deposition testimony of other potential witnesses, and it was alleged that he had already formed adverse opinions regarding Fairchild's injuries before the IME was requested.[8] Under the circumstances present here, we agree with the Court of Appeals that Palmer has shown no abuse of discretion in this regard.

## III. CONCLUSION

We affirm the decision of the Court of Appeals, which found reversible error in the trial court's failure to submit the issue of punitive damages to the jury and to charge the jury on the intervening negligence of a treating physician, and found the trial court did not abuse its discretion in denying Palmer's motion for an IME to be performed by Dr. Ballenger.

**AFFIRMED.**

TOAL, C.J., PLEICONES, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.

---

8. Fairchild notes that, immediately after the denial of the motion for an IME, Palmer supplemented his discovery responses with a listing of adverse opinions regarding Fairchild's injuries that Dr. Ballenger planned to testify to at trial. Thus, Dr. Ballenger must have already formed these adverse opinions prior to the time an IME could have been scheduled. Further, Dr. Ballenger did testify at trial as a defense witness for Palmer in accordance with these adverse opinions.