**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

Karrie Gurwood and Howard Gurwood, Appellants,

v.

GCA Services Group, Inc. and GCA Services Group of North Carolina, Inc., Respondents.

Appellate Case No. 2019-001403

---

Appeal From Charleston County
Alex Kinlaw, Jr., Circuit Court Judge

---

Unpublished Opinion No. 2022-UP-462
Submitted September 1, 2022 – Filed December 21, 2022

---

### REVERSED AND REMANDED

---

Karrie Gurwood, of Charleston, pro se.

Howard Gurwood, of Charleston, pro se.

Robert T. Lyles, Jr., of Lyles & Associates, LLC, of Mt. Pleasant, for Respondents.

---

**PER CURIAM:** On Sunday, August 5, 2012, Karrie Gurwood (Karrie) slipped and fell on the freshly waxed floor of her workplace, Liberty Hill Academy, injuring her legs. Karrie and her husband, Howard Gurwood (Howard), sued GCA Services

Group, Inc. and GCA Services Group of North Carolina, Inc. (collectively, GCA), the janitorial services company whose employee waxed the floors at Liberty Hill the day of Karrie's fall, for negligence and loss of consortium. A jury found both GCA and Karrie fifty percent at fault for the slip-and-fall accident; awarded Karrie $85,314 for half of her current medical costs but nothing for her pain and suffering and future medical costs; and found for GCA on Howard's loss of consortium claim. The Gurwoods filed motions for new trial absolute and new trial *nisi additur*, but the trial court denied these motions. The Gurwoods then filed this appeal.

On appeal, the Gurwoods argue the trial court erred in: (1) denying their new trial motions, (2) granting GCA's directed verdict motion as to punitive damages, (3) allowing GCA's expert liability witness to testify when her "methodology . . . lacked any indicia of reliability," (4) excluding the Gurwoods' expert's testimony as to how GCA could have guarded against the dangerous condition in this case, (4) allowing GCA to introduce collateral source evidence to impeach Karrie, and (5) denying the Gurwoods' directed verdict motion and instructing the jury as to assumption of risk. We reverse and remand for a new trial based on the erroneous grant of GCA's directed verdict motion as to punitive damages.

## I.        Directed Verdict and Punitive Damages

Based on the disputed and sharply conflicting evidence presented at trial, more than one reasonable inference could be drawn as to whether GCA—through its employee Bonnie Every—acted recklessly, willfully, or wantonly in waxing the floor at Liberty Hill on the date of Karrie's fall. *See Hollis v. Stonington Dev., LLC*, 394 S.C. 383, 393–94, 714 S.E.2d 904, 909–10 (Ct. App. 2011) ("When ruling on a directed verdict motion as to punitive damages, 'the circuit court must view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.'" (quoting *Mishoe v. QHG of Lake City, Inc.*, 366 S.C. 195, 200, 621 S.E.2d 363, 366 (Ct. App. 2005))); *Mishoe*, 366 S.C. at 200, 621 S.E.2d at 366 ("If the evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created and the motion should be denied."). The Gurwoods presented evidence that (1) Karrie did not see any warning signs about the waxed floor before her fall; (2) Karrie did not hear Sarah Jamme's, Liberty Hill's principal's, intercom announcement on the Friday before the incident about the school's floor being waxed over the weekend; (3) Every did not speak to Karrie the Friday before the incident about the floors being waxed over the weekend; (4) Howard did not see any warning signs about the waxed floor when he went to help Karrie after her fall; (5) Every admitted there were no teachers at the school the Tuesday to Friday prior to the incident; (6) Every admitted waxed floors were a safety hazard, and signs were

important to warn others of the dangers of a waxed floor; and (7) GCA required their employees to use a minimum of two types of warnings to close a freshly waxed floor area. Additionally, despite Every's testimony that she spoke to the Liberty Hill secretary about sending an email to the school's faculty and staff about the floor being waxed over the weekend, Every admitted she did not know if this email had been sent and no other witness at the trial had seen the email. Moreover, Every's testimony at trial about what warning signs she used to close off the waxed floor area contradicted her statements in an incident report as to what warning signs she placed at the school. Reasonable inferences could be drawn from this evidence that Every acted recklessly in failing to put up any warning signs about the waxed floor or by failing to use at least two forms of warnings as required by GCA's work policies and procedures manual when she knew a waxed floor created a dangerous condition and warning signs were important. *See Mishoe*, 366 S.C. at 201, 621 S.E.2d at 366 ("In order to receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or with reckless disregard for the plaintiff's rights."); *id.* ("When evidence exists that suggests a defendant is aware of a dangerous condition and does not take action to minimize or avoid the danger, sufficient evidence exists to create a jury issue as to whether there is clear and convincing evidence of willfulness.").

While we acknowledge GCA presented conflicting evidence that Every did not act recklessly because (1) she did put up wet wax signs and fold-out wet floor signs, (2) the wet wax signs were seen by Jamme the Thursday before the incident, and (3) Karrie was verbally warned about the floor being waxed on the Friday before the incident by Every and Jamme's intercom announcement, it is not our place to weigh the conflicting evidence. *See Fairchild v. S.C. Dep't of Transp.*, 398 S.C. 90, 99, 727 S.E.2d 407, 411 (2012) ("It is not the duty of the trial court to weigh the testimony in ruling on a motion for a directed verdict."); *Welch v. Epstein*, 342 S.C. 279, 300, 536 S.E.2d 408, 419 (Ct. App. 2000) ("When considering directed verdict . . . motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence."). Instead, it is for the jury to weigh the evidence and decide whether the Gurwoods met their burden of proof to present clear and convincing evidence of GCA's recklessness. *See Ralph v. McLaughlin*, 428 S.C. 320, 345, 834 S.E.2d 213, 226 (Ct. App. 2019) ("[I]n ruling on a directed verdict motion as to punitive damages, the circuit court must determine whether there are any reasonable inferences from the evidence to support the conclusion that the defendant's behavior was reckless. If such an inference can be made, the issue should be submitted to the jury, who in turn must determine whether recklessness was proven by clear and convincing evidence."), *rev'd by* 432 S.C. 640, 651, 856 S.E.2d 154, 159–60 (2021) (reversing the court of

appeal's finding that punitive damages should have been submitted to the jury because "no evidence creating a question of fact on the issue of punitive damages" existed, meaning only one reasonable inference as to the evidence existed). Accordingly, we reverse the trial court's grant of GCA's motion for a directed verdict as to punitive damages and remand for a new trial.

## II. Remaining Issues

Because our decision as to GCA's directed verdict motion on punitive damages is dispositive of the Gurwoods' appeal, we need not address the Gurwoods' remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (appellate court need not address remaining issues when the disposition of another issue is dispositive).

**REVERSED AND REMANDED.**[1]

**GEATHERS, MCDONALD, and HILL, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.